**Monroe E. BERKMAN,
Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant & Third Party
Plaintiff–Appellee,**

v.

**ARROW GENERAL, INCORPORATED,
Third Party Defendant–Appellee.**

No. 91–3037.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 31, 1991.

Decided Feb. 20, 1992.

---

**110**

Jon Franklin Mains, Mains & Mains, Alexandria, Va., argued, for Berkman.

Dennis Edward Szybala, Asst. U.S. Atty., Alexandria, Va., argued for appellees (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief for U.S., William Joseph Carter, Carr, Goodson & Lee, P.C., Fairfax, Va., on brief, for Arrow General).

Before WILKINSON and NIEMEYER, Circuit Judges, and HARVEY, Senior District Judge for the District of Maryland, sitting by designation.

OPINION

NIEMEYER, Circuit Judge:

While disembarking from a mobile lounge to the terminal at Washington's Dulles International Airport in northern Virginia, Monroe E. Berkman slipped on hydraulic fluid that escaped from a door mechanism and fell, injuring himself. He sued the United States for negligence under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1988), as the airport facilities were owned and operated by the Federal Aviation Administration (FAA), Department of Transportation. The district court concluded that the negligence, if any, was that of an independent contractor which was under contract to clean and maintain the airport facilities and dismissed the case under the FTCA's independent contractor exception. *See* 28 U.S.C. § 2671. On appeal, Berkman contends that (1) the duty to maintain premises in a safe condition is not delegable under Virginia tort law which is incorporated into the FTCA and, therefore, the United States remains liable even if the conduct was that of an independent contractor; (2) that the United States exercised day-to-day control over the independent contractor's work and is thus liable on an agency theory; and (3) that independent negligence on the part of employees of the United States, in any event, contributed to cause his injury.

Although the question is not settled, we agree with the district court that the independent contractor exception to the waiver of sovereign immunity under the FTCA excludes liability based solely on the negligence of an independent contractor. This is true even though Virginia law, which is incorporated under 28 U.S.C. § 1346(b), might hold other property owners liable for injuries resulting from unsafe conditions on the land because the duty to maintain property in a reasonably safe condition is nondelegable. We also agree that agency theory provides no basis to impute to the United States the negligence of the independent contractor. Because the district court never reached Berkman's claim based on the direct negligence of the FAA, however, we find it necessary to vacate the judgment and remand the case for consideration of that claim.

I

On May 17, 1987, Monroe E. Berkman, who was a passenger on a mobile lounge used to transfer him from an aircraft to the terminal at Washington's Dulles International Airport, slipped and fell while moving across a metal plate located in the doorway between the mobile lounge and the terminal. Berkman, who has walked with the aid of leg braces and crutches since age 12, slipped on an "oily substance" that had dropped onto the metal plate. The Federal Aviation Administration (FAA), an agency of the United States Department of Transportation, owned and operated Dulles International Airport at the time. After the accident, the terminal lounge supervisor, an employee of the FAA, contacted the terminal electrician, who was apparently also an employee of the FAA, and instructed the electrician to inspect the door through which Berkman was walking when he fell. The record reveals that the terminal electrician did inspect the door and concluded from that inspection that the door

was leaking hydraulic fluid. Because the electrician was unable to repair the door, the gate was put out of operation. Later that same day, another FAA employee repaired the leaking door and returned the gate to service.

On July 11, 1988, Berkman filed a damage claim with the Department of Transportation, and the Department, by letter dated May 15, 1990, denied his request for relief. Having spent nearly two years in exhausting his administrative options, Berkman filed suit in federal court against the United States alleging that the FAA was negligent in (1) lubricating the doors, (2) keeping the premises clean, (3) seeing to it that "slippery foreign substances were not left on the floor," (4) failing as a common carrier to transport him safely, and (5) failing to warn him of the hazardous condition. The government answered, denying liability, and filed a third-party claim against Arrow General, Incorporated, a company with which the FAA contracted to provide custodial services at Dulles. The government alleged, apparently for the first time, that Arrow General was responsible for the oily floor which caused Berkman's fall.

The scope of the contract between the FAA and Arrow General is described by the contract's terms:

This contract includes: floor cleaning and maintenance; restroom cleaning, disinfecting, and servicing; room cleaning; dusting; policing; routine inspection; and miscellaneous tasks as specified in C.10, Technical Specifications. It is also the declared intention of this contract to provide refuse removal services and walk-off mat services as described in C.10, Technical Specifications.

Nothing in section C.10 of the contract, or anywhere else in that document, assigns mechanical, electrical or hydraulic work to Arrow General. Nor does the contract appear to delegate maintenance (other than cleaning) of the malfunctioning door which may have been a cause of Berkman's fall.

Shortly after answering and impleading Arrow General, the United States filed a motion to dismiss the complaint or, in the alternative, for summary judgment, on grounds that the government cannot be held liable for Arrow General's alleged negligence. The United States argued that Arrow General was an independent contractor, and was responsible for failing to discover and remove the oily substance which caused Berkman's injuries. The district court granted the motion to dismiss, concluding that:

the negligence complained of is that of an independent contractor, Arrow General, Inc., and ... the liability of the United States as owner of the premises cannot be asserted under the Federal Tort Claims Act.

This appeal followed.

## II

The tort liability of the United States in this case rests entirely upon the waiver of sovereign immunity under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. "That Act provides for 'a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" *Wood v. Standard Products Co., Inc.*, 671 F.2d 825, 829 (4th Cir.1982) (quoting *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976)). The FTCA, by its own terms, applies only to the acts of federal employees and explicitly excludes the possibility of federal government liability for the acts of independent government contractors. Section 1346(b) covers injuries "caused by the negligent or wrongful act or omission *of any employee* of the Government while acting within the scope of his office or employment" (emphasis added), but the term, employee of the government, "does not include any contractor with the United States," *see* 28 U.S.C. § 2671.

Berkman contends that, even if an independent contractor was negligent in failing to clean and maintain the terminal facilities, the United States is nevertheless liable as an "owner and occupier" of the

airport. He notes that the United States waives immunity and accepts liability to the extent that a "private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Under Virginia law (Virginia being the state in which the airport is located), an owner and occupier of land may not delegate to third persons its duty to maintain premises in a reasonably safe condition for its invitees. *See, e.g., Love v. Schmidt,* 239 Va. 357, 389 S.E.2d 707, 710 (1990) (holding that landlord's common law duty to provide reasonably safe premises cannot be delegated to independent contractor). Berkman therefore asserts that since, under Virginia law, a private owner or occupier of premises has a nondelegable duty to invitees to keep the premises reasonably safe, so too does the United States. His position is supported by *Dickerson, Inc. v. United States,* 875 F.2d 1577, 1582–84 (11th Cir.1989), where the court, faced with the same question presented here, stated, "the independent contractor exception in the FTCA would not insulate the Government from the contractor's negligence if the duty was nondelegable under Florida law." *Id.* at 1583. Berkman's contentions therefore raise the question whether the independent contractor exception of 28 U.S.C. § 2671 limits the scope of waiver under 28 U.S.C. § 1346(b). We hold that it does.

▮ We note from the start that, although the threshold inquiry into governmental liability as defined by the FTCA requires an examination of state law to define *tortious conduct,* the question of *whether* a state law tort can be applied against the United States is exclusively one of federal law. Claimants obtain their " 'right to sue [the federal government] from Congress [and they] necessarily must take it subject to such restrictions as have been imposed.' " *Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953) (quoting *Federal Housing Administration v. Burr,* 309 U.S. 242, 251, 60 S.Ct. 488, 493, 84 L.Ed. 724 (1940)). As stated in *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121 (1973):

Congress, of course, could have left the determination as to whose negligence the Government should be liable *for* under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this congressional choice leaves the courts free to look to the law of torts and agency to define "contractor," it does not leave them free to abrogate the exemption that the Act provides.

*See also id.* at 528–29 & n. 7, 93 S.Ct. at 2219–20 & n. 7 (considering whether *federal* law imposes a nondelegable duty on the Bureau of Prisons to provide prisoners with "safekeeping, care, and subsistence").

Thus, while Berkman is correct in his assertion that, under Virginia law, the United States when acting as a landowner must maintain its property in a reasonably safe condition, Berkman must also show that federal law permits the application of this law to the United States. This he fails to do. The fundamental error in Berkman's reasoning flows from the fact that the government of the United States can act only through people. Furthermore, it is well-understood that the government's activities are not performed exclusively by the government's employees and that independent contractors and subcontractors conduct a broad array of functions on the government's behalf. Thus, the FTCA divides the universe of persons through which the United States may act into two general classes, "employee[s] of the Government" and "contractor[s]." *See* 28 U.S.C. §§ 1346(b), 2671.

In waiving tort immunity, the federal government agrees to be fiscally responsible only when the tortious conduct is performed by government employees and not when performed by contractors. Section 1346(b) imposes on the United States liability for tortious conduct "of any *employee* ... acting within the scope of his office or employment" (emphasis added), and § 2671

carefully defines employee to exclude "any contractor with the United States." This is but one of various limitations on the waiver of sovereign immunity that is imposed by the FTCA. *See, e.g.,* 28 U.S.C. § 2674 (limiting the type of damage for which the United States is liable); 28 U.S.C. § 2680 (limiting the type of tort claim for which the United States is liable).

■ The establishment of such a scheme in which Congress has placed the focus, when determining the applicability to the United States of state tort law, upon *the person* or entity whose tortious conduct a plaintiff seeks to impute to the United States, we think necessarily forestalls any notion that the government becomes liable, itself, for a generalized breach of duty. Remembering that the FTCA is to be narrowly construed against waivers of sovereign immunity, *see United States v. Orleans,* 425 U.S. at 813–14, 96 S.Ct. at 1975–76, we find nothing in the language of the act or in the legislative history of the FTCA to indicate that Congress considered the existence of a generalized liability, attributable to the United States based on any breach of a state defined duty. By expressly waiving immunity for the tortious conduct of its employees, and only its employees, the FTCA requires a more focussed approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law.

Thus, while the delegation by a land owner of responsibility for the physical performance of the tasks involved in making land safe may be inconsequential to the determination of liability for the inadequate performance of those tasks under Virginia law, such a delegation *is* material for determining the liability of the United States under the FTCA. Having so concluded, and recognizing that we find ourselves in disagreement with the Eleventh Circuit's decision in *Dickerson,* we agree with the district court's ruling that the application of the independent contractor exception of § 2671 shields the United States from tort liability which might otherwise arise from the performance of duties which were reasonably delegated to the contractor.

### III

Berkman also seeks to bypass the independent contractor exception by contending that the FAA exercised such day-to-day control over the affairs of Arrow General that Arrow General was "primarily acting as [an] instrumentalit[y] or agenc[y] of the United States, ... [or] on behalf of a federal agency in an official capacity," 28 U.S.C. § 2671, and the United States is therefore liable for its negligence.

■ The test for whether an alleged tortfeasor is an employee rather than an independent contractor of the United States is whether the contractor's detailed physical performance is subject to governmental supervision. *See Logue,* 412 U.S. at 531, 93 S.Ct. at 2221. Stated differently, a court must consider whether the government exercises day-to-day control over the performance of the work under the contract. *See Wood,* 671 F.2d at 829. In support of his contention that the FAA did exercise such control over Arrow General's work under the contract, Berkman notes that the contract between Arrow General and the United States provided that all Arrow General's operations were subject to federal rules and regulations, and many of the tasks assigned in the contract were "subject to Government inspection, both during and after completion of the tasks." The contract also specified that certain cleaning tasks were to be performed, when necessary, at the direction of an FAA supervisor. Work schedules for Arrow General employees were to be submitted and approved by the FAA. Also, Arrow General was required to obtain insurance to "protect the Government and the Contractor against all liability ... for personal injury ... resulting from operations of [Arrow General or its] subcontractors."

While we agree with Berkman that the government contracted for the right periodically to inspect Arrow General's performance and ensure that the services provided were in compliance with the terms of the

contract, this does not amount to the government having day-to-day physical control of Arrow General's operations. As the Court stated in *United States v. Orleans*, 425 U.S. at 814, 96 S.Ct. at 1975–76 (quoting *Logue*, 412 U.S. at 528, 93 S.Ct. at 2219): "[a] critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" And as we held in *Wood*, 671 F.2d at 832, "the real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." Berkman provided the district court with no evidence that the FAA took control over the actual performance of janitorial services at Dulles Airport on a day-to-day basis. Because we cannot accept the suggestion that a contractor loses its independence and becomes an "employee" of the government in every case in which the government writes into the contract sufficient procedural safeguards to ensure compliance with the terms of the agreement, we concur with the district court in its conclusion that Arrow General was an independent contractor within the meaning of the FTCA.

IV

The fact that an independent contractor may have been responsible for Berkman's fall, however, cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort. *See McKay v. United States*, 703 F.2d 464, 472 (10th Cir.1983) (noting that the FTCA precludes government liability for torts of an independent contractor "[a]bsent negligence on its part"). Berkman's complaint alleges that the FAA had a duty to "clean, maintain, inspect, and keep said shuttle buses and disembarkation lounges attendant thereto in good order." The complaint also alleges that the FAA "failed to use reasonable care while lubricating the doors" and failed to inspect to see that slippery substances were not left on the floor (which is apparently an allusion to the fact that it was not until after Berkman fell that the door was

inspected and discovered to be leaking hydraulic fluid onto the metal plate upon which Berkman allegedly slipped). Since the contract between the FAA and Arrow General did not, by its terms, delegate these allegedly causative tasks to Arrow General, it would appear that Berkman has effectively claimed that both the government and Arrow General were responsible for his injuries. While it *may* be true that Arrow General should have removed the spill before Berkman slipped, it *may* also be true that negligent inspection and maintenance of the door, as well as the failure to close the gate to passenger use prior to Berkman's fall, constituted negligence on the FAA's part and was at least a partial cause of the accident. The issue of FAA negligence and causation stands wholly apart from that of Arrow General. *See Logue*, 412 U.S. at 532–33, 93 S.Ct. at 2221–22 (vacating judgment to determine whether negligence of government employee, *as distinct from and in addition to the* negligence of an independent contractor, was a cause of the injuries alleged).

It would appear that this point was overlooked as an element of Berkman's claim during the more extensive discussion on the other points argued to the district court. At the hearing on the defendant's motion to dismiss, Berkman's attorney did make the argument to the district court that "more than one entity can be held responsible if they are determined to have control over the premises." However, the point was not vigorously pressed and was apparently overshadowed by the argument that the United States could not delegate its duty to maintain the airport in a reasonably safe condition.

V

While we conclude that the district court was correct in dismissing Berkman's claim against the United States insofar as the complaint is construed to allege that Arrow General's negligence in performing the duties assigned to it caused his injuries, we determine that the complaint cannot be dismissed altogether until the claims alleging

negligence on the part of FAA employees are resolved. Of course, in reaching this conclusion we express no opinion on the merits of the controversy. Accordingly, the judgment is vacated and the case remanded for further proceedings.

VACATED AND REMANDED.