**SHEILA GOTHA, Plaintiff**

**v.**

**UNITED STATES OF AMERICA, Defendant**

Civil No. 1995-0002

District Court of the Virgin Islands

Div. of St. Croix

June 24, 1996

MICHAEL HUMPHREYS, AUSA, U.S. Attorney's Office, Christiansted, St. Croix, U.S.V.I., *for Defendant*

DIANE RUSSELL, ESQ., (HOLT & RUSSELL), Christiansted, St. Croix, U.S.V.I., *for Plaintiff*

FINCH, *Judge*

## OPINION

This matter comes before the Court on defendant's motion to dismiss. For reasons stated below, the Court will grant defendant's motion.

### Factual Background

This action arises out of an accident that occurred on the United States Naval UnderWater Tracking Range ("UTR"). The UTR is an

351

instrumented ocean area located west of St. Croix, U.S. Virgin Islands, and monitored from a shore complex on the island itself. The United States Navy owns the UTR and its shore complex. The Navy is not solely responsible for the management of the UTR, however; the Navy has delegated certain responsibilities to a civilian contractor, Martin Marietta Services, Inc. Pursuant to the contract between these two parties, entitled "Statement of Work":

> the Contractor shall perform Class III property mainte-nance including electrical, plumbing, carpentry, painting, and roofing. Class II property maintenance and construc-tion will be under the cognizance of the Naval Station Public Works Officer. The Contractor shall be responsible to timely notify pertinent authorities of Class II property repairs.

Statement of Work, § 6.6.6.

Plaintiff in the instant action, Sheila Gotha, was an employee of Martin Marietta assigned to the UTR. On February 20, 1994, Gotha, who had just completed her shift, was returning to the Surface Ship Radiated Noise Measurement ("SSRNM") trailer at the UTR. Declining to use the stairway leading to the SSRNM trailer, she instead decided to use the shortest and most direct path down a grass-covered hill. The path chosen by Gotha had no staircase, handrails, or artificial lighting, and the grass on the path had been dampened by a recent rainfall. Gotha allegedly slipped and fell on the path, fracturing her right ankle.

Following such injury, Gotha brought this suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80. Gotha claims that her fall was caused by the Navy's failure to provide an adequate walkway across the complex and, more particularly, its failure to provide necessary lighting and stairs. Gotha seeks damages totalling $506,000 for her injuries.

The United States has filed, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss the com-plaint or, in the alternative, for summary judgment. The United States contends that its conduct falls within two exceptions to the FTCA and thus that this Court lacks jurisdiction over the matter. *See Dalehite v. United States*, 346 U.S. 15, 31-32, 97 L. Ed. 1427, 73 S.

Ct. 956 (1953) (holding that the question of whether conduct falls within a statutory exception to the FTCA is jurisdictional in nature).

## Standard of Review

■ There is a rather unique standard of review — one overlooked by both parties — that governs a defendant's 12(b)(1) challenge to the court's subject matter jurisdiction. As always, plaintiff, as the party invoking jurisdiction, bears the burden of establishing it. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 80 L. Ed. 1135, 56 S. Ct. 780 (1936); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir.), *cert. denied*, 114 S. Ct. 440 (1993). The *nature* of plaintiff's burden varies with the purpose of the 12(b)(1) motion, however. If the motion challenges only the sufficiency of plaintiff's allegations of subject matter jurisdiction — a "facial" challenge — the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In contrast, where the challenge to jurisdiction is a "factual" one — attacking subject matter jurisdiction as a matter of fact, based on extrinsic evidence outside the pleadings — then plaintiff's allegations are not controlling, but are instead merely evidence on the issue.[1]

*Id.* Indeed,

> because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the

---

[1] In actions alleging a violation of the Constitution or a federal statute, there is yet another twist to this rule: in such cases, where an attack on federal question jurisdiction is in essence an attack on the merits, dismissal is appropriate only where the federal claim is "made solely for the purpose of obtaining jurisdiction" or if the claim is "wholly insubstantial and frivolous." *See Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1280-81 (3d Cir. 1993) (noting the established rule that "legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court") (quotations omitted).

353

existence of disputed material facts will not preclude the court from evaluating for itself the merits of the jurisdictional claims.

*Id.* In evaluating such merits, the court is free to consider exhibits outside the pleadings.[2] *See id.*

The United States' challenge, requiring the Court to look beyond the pleadings, is a factual one. The Court is thus free to weigh the evidence in order to satisfy itself that jurisdiction exists. With this in mind, the Court turns to the merits of the motion.

## Discussion

### A. The Federal Tort Claims Act

Traditionally, the United States, as sovereign, enjoys immunity from tort actions such as this one. Suit is permissible only where the United States consents to be sued — that is, where the United States has waived its immunity. *See Dalehite,* 346 U.S. at 30.

■ The Federal Tort Claims Act, 28 U.S.C. § 1346(b), is just such a waiver of immunity, conferring jurisdiction in the federal courts over suits for damages against the United States. Section 1346(b) authorizes suit:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred.

---

[2] The United States styled its motion as "A Motion to Dismiss or, in the Alternative, For Summary Judgment." Traditionally, where a motion to dismiss requires that the court consider matters outside the pleadings, it will be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because the court is free to consider supplemental submissions in a Rule 12(b)(1) motion, however, it is unnecessary for the Court here to view plaintiff's motion as a motion for summary judgment. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir. 1995) (noting that proper practice is to dismiss for want of jurisdiction for purposes of the FTCA under Rule 12(b)(1), *not to grant summary judgment* under Rule 56(c)).

Thus, for the United States to be held liable in this case, the Court must find that an employee of the federal government was negligent in relation to the maintenance of the area in question.

The United States advances two distinct arguments as to why there is no such liability — and thus why this Court lacks subject matter jurisdiction over the instant case. First, the United States contends that it delegated its duty to maintain the UTR premises to Martin Marietta and, as such, is immune under the FTCA for the negligent actions or omissions of its independent contractor (the "independent contractor exception"). Second, the United States argues that the "discretionary function exception" bars any claim that it failed properly to oversee Martin Marietta's performance.

## 1. The Independent Contractor Exception[3]

■ As noted, the FTCA provides a limited waiver of sovereign immunity for the torts of government employees. The FTCA defines government employees to include officers and employees of "any federal agency"; excluded from this definition is "any contractor with the United States." 28 U.S.C. § 2671. Pursuant to the express language of section 2671, then, the United States is not liable under the FTCA for the negligent actions or omissions of its independent contractors.

■ The United States relies upon this exception, contending that the employees of Martin Marietta are not employees of a federal agency, but rather are simply independent contractors. A critical element in drawing the distinction between the two is "the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *United States v. Orleans*, 425 U.S. 807, 814, 48 L. Ed. 2d 390, 96 S. Ct. 1971 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528, 37 L. Ed. 2d 121, 93 S. Ct. 2215 (1973)). In

---

[3] Gotha contends that the United States' argument on this point is time-barred, as it was not made until one month after the cut-off date for filing motions in this matter. Because the question of whether conduct falls within a statutory exception to the FTCA is jurisdictional in nature, *see Dalehite v. United States*, 346 U.S. 15, 31-32, 97 L. Ed. 1427, 73 S. Ct. 956 (1953), however, the United States is free to raise its argument even at this late date. *See EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1048 (3d Cir.) (noting that unlike a challenge to personal jurisdiction, a challenge to a court's subject matter jurisdiction may be raised by any party or court at any time), *cert. denied*, 126 L. Ed. 2d 151, 114 S. Ct. 193 (1993).

other words, if the contractor's "day-to-day operations are supervised by the Federal Government," then the contractor is to be treated as a federal employee. *Id.* at 815; *see also Letnes v. United States,* 820 F.2d 1517, 1519 (9th Cir. 1987) ("There must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee.").

The United States argues that it possessed no control over the performance of Martin Marietta; it concludes that "overall, the contract provisions and the intent of the contract (Statement of Work) show no retention of day-to-day control over the physical details of property management and no exercise of day-to-day control by the U.S. Navy." Def.'s Mot. to Dismiss at 13. The terms of the Statement of Work do not fully support the United States' argument, however. As noted, section 6.6.6 of the Statement provides that:

> the Contractor shall perform Class III property maintenance including electrical, plumbing, carpentry, painting, and roofing. *Class II property maintenance and construction will be under the cognizance of the Naval Station Public Works Officer.* The Contractor shall be responsible to timely notify pertinent authorities of Class II property repairs.

(emphasis added).

The deposition testimony submitted by Gotha is helpful in interpreting section 6.6.6. According to Serafin Garcia, the Naval employee in charge of facility repairs, Class III property maintenance is limited to repairs of plant equipment. Garcia dep. at 5. The construction and modification of the facilities, Garcia testified, are within Class II property maintenance. Id. at 4. As Garcia explained, "the government has Class II responsibility," id. at 5; Garcia further testified that the Navy bore "primary responsibility" for making sure lighting and stairs were adequate on the facilities. Id. at 9. The contractor could not make such repairs unilaterally, Garcia noted, but instead was required to "go through the government." Id. at 4. Finally, Garcia answered in the affirmative when asked whether the Navy employed its own inspectors to assess the necessity of Class II repairs, although Garcia did not know "exactly what [such inspectors] do". *Id.* at 5.

David Velez, Garcia's supervisor, echoed Garcia's testimony. As Velez explained, "the contractor is responsible for operations and maintenance of the instrumentation system that we have at the site. *That is the extent of his responsibilities.* "Velez dep. at 30 (emphasis added). In contrast, Velez testified, "the government takes care of the whole buildings and structures." *Id.* at 29. As an example of such maintenance, Velez explained, the "contractor calls me and tells me the air-conditioner died. I call my maintenance engineer, the maintenance engineer submits a work request to [the Naval Station] Public Works. *We* get the air conditioner fixed." *Id.* at 29 (emphasis added). When the contractor made safety recommendations, Velez reiterated, "the Navy evaluates them. If they are found valid, yes, we tend to correct them." Id. at 32 (emphasis added).

█ The undisputed evidence indicates that Class II repairs — the installation of stairs, lighting, and handrails on the path at issue — were squarely within the Navy's purview. Indeed, the United States "concedes that in the event it became necessary to install steps at the UTR it would have been the Navy's responsibility to install such steps." Def.'s Reply to Pl.'s Op. at 5.

██ Having so found, it becomes apparent that the independent contractor exception has no place here. Such exception excuses the United States from derivative or vicarious liability for the acts and omissions of its independent contractors. Here, however, the conduct challenged is not that of the independent contractor. Gotha's complaint alleges negligence in "failing to provide stairs with handrails for workers and failing to provide sufficient lighting on the property where the accident occurred."[4] Compl. at ¶ 5. The United States did not delegate the responsibility to provide stairs and lighting to Martin Marietta, but rather assumed such responsibility itself. The United States is directly liable for its own negligence in carrying out these responsibilities.

---

[4]The bulk of Gotha's claim challenges the Navy's negligence in making Class II repairs. The complaint does, however, also allege that the Navy "failed to maintain the Navy station in a safe condition." To the extent that this allegation involves a challenge to equipment safety — that is, to Class III repairs — Gotha's claim appears to be barred. There is no evidence to suggest that the United States controlled the day-to-day activities of the contractor in regard to such repairs.

*See Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992) (ruling that the independent contractor exception did not apply where the government did not delegate to the independent contractor the acts which allegedly caused the injury); *Phillips v. United States*, 956 F.2d 1071, 1077 (11th Cir. 1992) (holding that where the Army Corps of Engineers had retained substantial responsibilities over a construction project undertaken by independent contractors, the independent contractor exception did not bar suit against the government for injuries resulting from its own negligent failure to carry out its safety responsibilities); *cf. Logue*, 412 U.S. at 532-33 (vacating judgment to determine whether negligence of government employee, as distinct from negligence of independent contractor, was a cause of the injuries alleged). The independent contractor exception to the FTCA will not insulate the United States from liability to plaintiff.

## 2. The Discretionary Function Exception

The United States' next contention is that the "discretionary function exception" deprives this Court of subject matter jurisdiction. This "discretionary function exception," contained in section 2680(a) of the FTCA, provides that the United States does not waive its sovereign immunity for

> any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■ The Supreme Court has established a two-pronged test for determining whether the discretionary function exception bars a suit against the United States. First, the reviewing court must determine whether the conduct "involves an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536, 100 L. Ed. 2d 531, 108 S. Ct. 1954 (1988). The exception will not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Id.* If the action is

358

indeed the product of judgment or choice, the court must next determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* As the Court explained, "the exception, properly construed . . . protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537. Significantly, the Supreme Court has made clear that the requirement that a decision be grounded in policy does not exclude "operational" decisions from the reach of the exception:

> A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly require judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*United States v. Gaubert,* 499 U.S. 315, 325, 113 L. Ed. 2d 335, 111 S. Ct. 1267 (1991).

Applying these criteria, the United States argues that its decision to delegate safety responsibility to Martin Marietta satisfies both prongs of the discretionary function exception, and thus is protected from judicial scrutiny. Although the United States' assertion is undoubtedly correct, *see United States v. Varig Airlines,* 467 U.S. 797, 819-20, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."), its argument has little relevance here. The Court has found that the challenged conduct — that being the decision not to install stairs and lighting (the "non-decision," as the United States characterizes it) — was *not* delegated. The significant question thus becomes whether the United States' performance of its *retained* duties falls within the ambit of the discretionary function exception.

■ In response to this inquiry, Gotha contends that the United States' decision regarding stairs and lighting fails prong one of the discretionary function analysis because the Occupational Safety

and Health Act ("OSHA") made these repairs mandatory.[5] The Court agrees with plaintiff that the Navy was required to comply with OSHA's provisions. That said, the Court is equally persuaded that the specific regulations cited by plaintiff impose no duty upon the Navy in the instant matter.

In making her argument, Gotha relies extensively on 29 C.F.R. § 1910.35-37; these regulations make express that:

> this subpart contains general fundamental requirements essential to providing a safe means of egress from fire and like emergencies.

29 C.F.R. § 1910.36(a). In turn, "egress" is defined by the regulations as:

> a continuous and unobstructed way of exit travel from any point in a building or structure to a public way and consists of three separate and distinct parts: the way of exit access, the exit, and the way of exit discharge.

29 C.F.R. § 1910.35(a). Clearly, these regulations do not apply to the conduct challenged by plaintiff. 29 C.F.R. § 1926.57, also relied upon by plaintiff, is similarly inapplicable; it is intended by its express language only to govern construction sites.

■ Because plaintiff has proffered no mandatory statute, regulation, or policy that removes the challenged conduct from the judgment of the United States, the Court advances to the second tier of the discretionary function analysis — to consider whether the challenged decision involved the kind of policy concerns protected by the discretionary function exception. This second analysis is independent from the first; as the Supreme Court has cautioned,

---

[5] Gotha also argues that the Statement of Work required the United States to make Class II repairs such as the installation of lighting and stairs. The Court finds no precedent to suggest that the breach of a contractual obligation is sufficient by itself to take the United States' conduct outside of the discretionary function exception, however. *See Koch v. United States*, 814 F. Supp. 1221, 1230 (M.D. Pa. 1993) ("Breach of a contractual obligation owed to a private party, voluntarily assumed, is not in the same category as the violation of statutes, regulations or mandatory guidelines imposed on an agency by a legislative or a rule-making body.").

there are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert*, 499 U.S. at 325 n.7. Importantly, when considering whether a decision implicates policy considerations, the proper inquiry is not whether the government actually considered policy when making its decision, but rather, more generally, whether the nature of the challenged decision is one which the Court could expect inherently to be grounded in considerations of policy. *Id.* at 324-25; *see also Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993) ("We find largely irrelevant the presence or absence of evidence that involved government agents which did or did not engage in a deliberative process before exercising their judgment.").

The United States has presented affidavits articulating quite cogently the policy concerns implicated in its decision. Officer Velez, the Technical Director for the Atlantic Fleet Weapons Facility (which includes the UTR), explained that:

in evaluating a decision of whether to install an outdoor staircase and artificial lighting at the UTR there are military, social and economic considerations involved. Military considerations involve a policy of ensuring that United States Navy and allied forces can safely train with weapons in a realistic warfare environment. Sophisticated weapons range monitoring devices, such as hydrophones and cables installed at the UTR, could be damaged by construction near the cables. The policy is achieved by evaluating proposed facility modifications to ensure they

361

do not degrade performance of the command's weapons training mission. Social considerations include the safety of the personnel using the facility. . . . I [also] review the economic considerations of the report of an unsafe condition when a modification to a facility is proposed. The economic considerations involve a number of variables which . . . include budgetary constraints, contractual considerations, federal procurement regulations, statutory restrictions on the use of appropriated funds, prioritizing with other work projects, consultation with the property holder, and the projected service life of the affected facility.

Velez dep. at ¶¶ 5-6. Chief Warrant Officer Laurence James echoed Velez' testimony.

■ As the affidavits adduced by the United States demonstrate, a complex set of policy imperatives undergird the Navy's decision. First, the Navy was required to consider the effect of any construction on existing military hardware; further informing its decision were budgetary constraints and safety concerns. These are precisely the policy considerations contemplated by Congress when creating the discretionary function exception. *See Ayer v. United States,*. 902 F.2d 1038, 1043-44 (1st Cir. 1990) (holding that Air Force decision not to include safety railings in missile launch control chamber fell within the discretionary function exception); *cf. Boyle v. United Technologies Corp.,* 487 U.S. 500, 511, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988) ("The selection of the appropriate design for military equipment . . . is assuredly a discretionary function. It often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness.").

A policy decision was made concerning the installation of steps on the UTR premises and that decision is protected by the discretionary function exception. Consequently, this Court lacks jurisdiction. An appropriate order shall accompany this opinion.

## ORDER

This matter comes before the Court on defendant's December 13, 1995 Motion to Dismiss or, in the Alternative, for Summary Judgment. Having carefully considered the submissions of the parties, it is hereby

ORDERED that defendant's motion is GRANTED. The complaint filed by Sheila Gotha is DISMISSED.