Viktoria T. **RHOADES** and Donald Rhoades, her husband, Plaintiffs,

v.

**UNITED STATES** of America and R.S. Hogan, Inc., a Maryland corporation, Defendants.

Civil Action No. 95–616 MMS.

United States District Court, D. Delaware.

Argued Sept. 26, 1996.

Decided Dec. 18, 1996.

Scott E. Chambers, of Schmittinger & Rodriguez, Dover, DE, for plaintiffs.

Gregory M. Sleet, United States Attorney, and David A. Green, Assistant United States Attorney, Department of Justice, Wilmington, DE, for defendant United States of America.

William J. Cattie, III, of Heckler & Cattie, Wilmington, DE, for defendant R.S. Hogan, Inc.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## I.  INTRODUCTION

Plaintiffs Viktoria T. Rhoades and Donald Rhoades filed this personal injury suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. Specifically, plaintiffs assert the United States was negligent in maintaining the Dover Air Force Base Exchange (the "Base Exchange") and this negligence caused their personal injuries. In an amended complaint, plaintiffs added a count in negligence against R.S. Hogan Inc. ("Hogan"), a Maryland corporation that had been performing renovations at the Base Exchange.

In response, the United States filed a 12(b)(1) motion to dismiss Count I of the complaint for lack of subject matter jurisdiction. In the alternative, the United States has sought leave to file a cross-claim against Hogan, asserting that under the terms of their service contract Hogan was responsible for any injuries suffered by Rhoades. Finally, Hogan filed its own cross-claim against the United States.

In support of its 12(b)(1) motion to dismiss, the United States asserts this Court does not have jurisdiction because sovereign immunity acts as a bar to lawsuits filed against it. Briefly, the United States argues it has not waived sovereign immunity because any negligent acts were committed by Hogan, an independent contractor; the FTCA does not allow liability to be imputed to the United States for the negligence of its independent contractors. The United States also argues that under the terms of its service contract with Hogan, it delegated responsibility for the safety of plaintiffs and did not have a duty to post warning signs; thus, it cannot be held responsible for the injuries suffered by plaintiffs.

For the reasons that follow, this Court holds that: (1) Hogan was an independent contractor and not an employee or agent of the United States, and thus the United States is not liable for Hogan's allegedly tortious conduct; and (2) issues of fact as to whether the United States was independently negligent and responsible for plaintiffs' injuries prevent dismissal of Count I against the United States. Accordingly, the United States' motion to dismiss Count I of the complaint for lack of subject matter jurisdiction will be denied. The United States will be granted leave to file a cross-claim against Hogan.

## II. JURISDICTION

The first count of the complaint, plaintiffs' action in negligence against the United States, is premised on the FTCA, 28 U.S.C. §§ 2671–80. This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1346.

Jurisdiction over Count II of the complaint, plaintiffs' action in negligence against Hogan, is based upon diversity of citizenship. 28 U.S.C. § 1332. Plaintiffs are residents of Newark, Delaware, and Hogan is a Maryland corporation with its principal place of business in Silver Springs, Maryland. The amount in controversy exceeds $50,000, exclusive of interest and costs.[1]

## III. FACTS

Hogan was awarded an Army–Air Force Exchange Service ("AAFES") contract for renovation of the main exchange at the Dover Air Force Base. Docket Item ("D.I.") 13, at Exhibit ("Exh.") A–1. Under the terms of the contract, the facility was to remain operational and Hogan assumed responsibility for the protection of the work and the workers and, to some extent, the safety and property of the public. Specifically, the contract stated:

> The contractor shall . . . be responsible for . . . complying with applicable Federal, state, foreign and municipal laws, codes and regulations, in connection with the prosecution of the work. **He/she shall be . . . responsible for all damages to persons or property that occur as a result of his/her fault or negligence. He/she shall take proper safety and health precautions to protect the work, the workers, the public and the property of others. He/she shall also be responsible for all materials delivered and work performed.**

D.I. 13 at Exh. A–4 (emphasis added).

Pursuant to the AAFES contract, Hogan was renovating an area of the Base Exchange. D.I. 8 at ¶ 13. In the area being renovated, Hogan was replacing the carpet. *Id.* Hogan had removed the old carpet and left it rolled up behind a plastic, translucent drop cloth that separated the renovated area from the rest of the Base Exchange, which remained open for business. D.I. 8 at ¶ 14(a). Hogan's principal asserts he placed the carpet near the bottom of the drop cloth at the request of the Base Exchange Manager, Ray Fernandez. D.I. 48 at Exh. C, ¶ 8.[2] According to Hogan, Fernandez made this request to prevent dust kicked up in the construction area from escaping under the curtain into the areas of the Base Exchange open to the shopping public. *Id.*

On December 7, 1994, plaintiffs were shopping in the Base Exchange. D.I. 13 at Exh. A–36–41. Plaintiff Viktoria Rhoades was browsing through display racks in the women's apparel section. *Id.* Behind her were the plastic drop cloth and the rolled-up carpet. *Id.* There is some dispute as to the exact location of the carpet; plaintiffs assert the carpet was protruding from the construction area into the shopping area, but other

---

1. Subsequent to the filing of this action, Congress increased the amount-in-controversy requirement for diversity jurisdiction to $75,000, exclusive of interest and costs. 28 U.S.C. § 1332, *as amended by* Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (1996).

2. This evidence was introduced through an affidavit submitted by Hogan in its supplemental briefing. The United States has moved to strike this affidavit. At argument, the Court, reasoning that justice required disposition on a complete evidentiary record, ordered supplemental briefing to address some new matters raised in the intervening period of discovery. The United States forcefully argues that the affidavit was not a matter raised during discovery; rather, it is a blatant attempt to alleviate some concerns the Court raised at oral argument. Further, the United States contends, it had no opportunity to depose Timothy Hogan, the affiant, so it is hamstrung to undercut any of the assertions in his affidavit.

But the Court will consider the affidavit for several reasons. First, consideration of the affidavit subserves the *raison d'être* of the order for supplemental briefing—it is better to decide the jurisdictional questions raised here on a complete record. Further, Hogan did not submit an initial brief in opposition to the United States' motion to dismiss; it merely joined in plaintiffs' opposition. After a few thought-provoking words from Hogan's counsel at argument, the Court strongly intimated that Hogan should file its own supplemental briefing. While this does not completely excuse Hogan for its failure to file an initial brief, in which it could have attached the affidavit, it contradicts any inference of desperation or bad faith.

witnesses state, and photographs indicate, the carpet was located just behind the drop cloth. D.I. 8 at ¶ 14(a); D.I. 35 at A–39–43, 46–48; D.I. 48 at Exh. F.

Similarly, witnesses differ on the amount of space between the display racks and the drop cloth. Melvin E. Collins, the AAFES loss prevention manager, estimated there was approximately three feet between the rack of clothes through which Plaintiff was browsing and the plastic drop cloth. *See* D.I. 35 at Exh. A–39–43, 46–48, Exh. B; D.I. 48 at Exh. D–15. Tess Wood, a Base Exchange employee, described the space between the rack and the drop cloth as much smaller, however; she testified there was "maybe one foot distance [sic] from the merchandise to the drop cloth." D.I. 48 at Exh. E–16. According to Hogan, the merchandise and display racks were frequently pushed by Base Exchange employees into the drop cloth, so that the racks actually protruded into the construction area. D.I. 48 at Exh. C, ¶ 7. In any event, there seems to be no dispute that the Base Exchange, in the midst of the busy holiday season, was trying to take advantage of all the display space it could.

Plaintiff Viktoria Rhoades tripped over the roll of carpet and fell through the drop cloth into the construction area, sustaining shoulder injuries. D.I. 8 at ¶¶ 6, 7. She was taken to the Dover Air Force Base emergency room. D.I. 31 at 4. While she was in the emergency room, her son was allegedly told by an unidentified orderly that Plaintiff was the second person in about a week who was injured "over at that site where they were doing construction with the carpeting." D.I. 31 at Exh. F–54.

Plaintiffs filed an administrative claim for damages. D.I. 31 at Exh. A. The claim was denied. D.I. 31 at Exh. B. They subsequently filed suit in this court, naming the United States and Hogan as defendants. D.I. 8. In Count I of the suit, plaintiffs set forth general allegations of negligence on the part of the United States, including negligent operation, control and management of the base premises, failure to give adequate warning, and failure to inspect and clean the Base Exchange floor. D.I. 8 at ¶ 7(a)-(e). The United States has now moved to dismiss this count—the only count asserted against it— for lack of subject matter jurisdiction. D.I. 12.

## IV. DISCUSSION

### A. The Federal Tort Claims Act ("FTCA")

■ The Federal Tort Claims Act ("FTCA") operates to waive the sovereign immunity of the United States for money damages when injuries are "caused by the negligent or wrongful act or omission of any employee of the Government. . . ." 28 U.S.C. § 1346(b). This waiver of sovereign immunity is limited, however. For example, the FTCA does not provide for liability of the United States for the actions of independent contractors. *See* 28 U.S.C. § 2674; *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976) ("Since the United States can be sued only to the extent that it has waived immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver."); *Logue v. United States,* 412 U.S. 521, 526, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973).[3] Any failure to comply strictly with the requirements of the FTCA is a jurisdictional defect. *Griffin v. United States,* 500 F.2d 1059, 1063 (3d Cir.1974).

### B. Standard of Review

■ The United States has filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. D.I. 12. As always, the parties invoking jurisdiction—in this case, plaintiffs Rhoades—bear the burden of establishing it. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936); *Williams v. United States,* 50 F.3d 299, 304 (4th Cir. 1995); *Kehr Packages, Inc. v. Fidelcor, Inc.,*

---

**3.** The second major limitation on the waiver of sovereign immunity in the FTCA is the discretionary function exception. Under this exception, the United States does not waive sovereign immunity for claims based upon an agent's performance or failure to perform a discretionary duty, whether or not the agent has exercised that discretion wisely or well. 28 U.S.C. § 2680(a). The United States has not urged application of the discretionary function exception in this case.

926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

■ The nature of the burden depends on the type of attack in the 12(b)(1) motion. Motions that make a "facial" challenge to the sufficiency of the plaintiff's allegations of subject matter jurisdiction are reviewed under a standard very similar to that of Rule 56 summary judgment motions; the court must accept as true all factual allegations and draw all reasonable inferences in favor of the non-moving party. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

■ The United States is not attacking the existence of subject matter jurisdiction on the face of plaintiffs' complaint. Rather, the United States is making a "factual" attack of subject matter jurisdiction; that is, based on extrinsic evidence outside of the pleadings, it urges that the Court does not have subject matter jurisdiction. The standard of review for a "factual" 12(b)(1) attack is very different from a "facial" attack. In the typical "factual" attack, the plaintiff's allegations are not controlling, but are mere evidence on the issue to be considered by the trial court. The trial court may also consider exhibits outside the pleadings. *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982). Indeed,

> [b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Mortensen,* 549 F.2d at 891. *Accord Williams,* 50 F.3d at 304; *Gotha v. United States,* 929 F.Supp. 207, 209–10 (D.Vir.Isl.1996); *Norman v. United States,* No. CIV.A.95–4111, 1996 WL 377136, at *1 (E.D.Pa. July 2, 1996).

■ A more difficult scenario is presented, however, when an alleged jurisdictional defect is intertwined with or constitutes an element of the alleged federal statutory cause of action itself. The combination of the plaintiff's burden of proof on jurisdiction, the court's freedom to resolve disputed jurisdictional facts, and the possibility that an attack on jurisdiction may be mounted at any time, may require a litigant to prove the merits of his claims at the earliest possible stage of the proceeding without the benefit of discovery and trial. *See Barnson v. United States,* 531 F.Supp. 614, 617–19 (D.Utah 1982) (exploring this situation "that has caused considerable confusion in FTCA cases."). This quandary arises most often in antitrust and securities cases, in which the basis for dismissal is alleged to be either that there is an insufficient nexus with interstate commerce to provide jurisdiction under the federal antitrust laws or that the interests sold were not "securities" as defined by the federal securities laws. *See Williamson v. Tucker,* 645 F.2d 404 (5th Cir.) (securities), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Chatham Condominium Ass'n v. Century Village, Inc.,* 597 F.2d 1002 (5th Cir.1979) (antitrust); *Mortensen,* 549 F.2d 884 (antitrust).

■ In these types of cases, courts have resolved this conceptual dilemma by assuming jurisdiction, then proceeding to examine the substantive merits of the claim, which contain the same issue as the jurisdictional question. The Fifth Circuit Court of Appeals has cogently explained why this is appropriate:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. *The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of*

*federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, · the case is dismissed on the merits.* This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim[.] ...

*Williamson,* 645 F.2d at 415 (emphasis added and footnote omitted). Thus, when the jurisdictional issues are inextricably intertwined with the merits of the cause of action, courts have not dismissed federal claims on Rule 12(b)(1) motions unless they are clearly insubstantial or immaterial. *See Williamson,* 645 F.2d at 416.

■ The Court has only found one case explicitly considering and applying this standard in an FTCA case, *Barnson v. United States,* 531 F.Supp. 614 (D.Utah 1982), but the reasoning of *Barnson,* based largely on the excerpted portion of *Williamson,* is equally applicable to this case. Plaintiffs Rhoades allege negligence on the part of the United States; the FTCA allows jurisdiction by waiving the sovereign immunity of the United States for money damages when injuries are "caused by the negligent or wrongful act or omission of any employee of the Government...." 28 U.S.C. § 1346(b). Thus, plaintiffs' basis for jurisdiction—the negligence of the Base Exchange and its employees—constitutes the very elements of their substantive claims.

If, as the United States urges, the Court were to weigh and resolve disputed jurisdictional facts—which, as demonstrated, are inextricable from the merits—the Court would, in essence, force plaintiffs to engage and prevail in at least two trials before becoming eligible for a remedy. Initially, and perhaps before discovery was complete, plaintiffs would have to prove to the Court the United States was negligent to show jurisdiction is proper; later, to obtain a remedy, plaintiffs would have to prove their case again, this time to a jury.

As was the *Barnson* court, this Court is convinced "[t]he practice of assuming jurisdiction and ruling on the merits after trial

... protects the defendant from never-ending litigation and also avoids the conceptual dilemma of ruling on the merits in a jurisdictional setting...." *Barnson,* 531 F.Supp. at 619. Therefore, the Court will not dismiss plaintiffs' claims unless they are "insubstantial." *Williamson,* 645 F.2d at 415. Attention is now turned to determining whether plaintiffs' claims are "insubstantial."

**C. The Independent Contractor Exception**

■ Under the FTCA, liability cannot be imputed to the United States for the acts of independent contractors. 28 U.S.C. 1346(b)(1); 28 U.S.C. § 2674; *Orleans,* 425 U.S. at 814, 96 S.Ct. at 1975; *Logue,* 412 U.S. at 526, 93 S.Ct. at 2218. In determining whether a party is a federal employee or an independent contractor, the court must look to the power of the federal government to "control the detailed physical performance of the contractor." *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). *See also United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Williams v. United States,* 50 F.3d at 306; *Gibson v. United States,* 567 F.2d 1237, 1242 (3d Cir.1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).

■ Applying this test to the case *sub judice,* Hogan is an independent contractor. The United States neither supervised nor controlled the daily operations or custodial duties of Hogan. Further, the contract between AAFES and Hogan was lengthy and inclusive; it gave Hogan full responsibility for the renovation and realignment of the Base Exchange and required Hogan to "take proper safety and health precautions to protect the work, the workers, the public and the property of others." D.I. 13 at Exh. A–4. *See Williams,* 50 F.3d at 307 (finding independent contractor status when the service contract was "a comprehensive instrument providing that [the contractor] was responsible for the maintenance of the Premises.").

Indeed, plaintiffs have conceded that Hogan is an independent contractor. *See D.I. 31 at 5.* Therefore, any negligent acts of

Hogan cannot be imputed to the United States. Faced with this roadblock, plaintiffs have tried a different approach: they assert that, independent of Hogan's negligence, employees of the United States were negligent.

### D. The Allegations of Negligence Against the United States

██ Plaintiffs allege the employees of the Base Exchange created a hazardous condition in the apparel section of the Base Exchange by placing a rack displaying merchandise dangerously close to the construction area. Under Delaware law, it is clear the United States has a duty to protect the public within that portion of the Base Exchange that remained open to business. *Woods v. Prices Corner Shopping Ctr.*, 541 A.2d 574 (Del.Super.Ct.1988). Further, despite the broad language of the AAFES contract commanding Hogan to "take proper safety and health precautions to protect the work, the workers, the public, and the property of others[,]" D.I. 13 at Exh. A–4, the United States properly conceded that it did not delegate its responsibility for the safety of Base Exchange shoppers to Hogan.

The United States argues summary judgment is appropriate because in the AAFES contract Hogan vouchsafed responsibility for "all materials delivered and work performed." D.I. 13 at Exh. A–4. It is uncontroverted that plaintiff Viktoria Rhoades tripped over the carpet, it is undisputed the carpet was material Hogan was using in its renovation work, and it is irrefutable that plaintiff fell into the construction area, sustaining injuries. Relying on *Williams v. United States*, 50 F.3d 299 (4th Cir.1995), the United States argues this is an open-and-shut case—Hogan was responsible under the terms of the contract and the United States should be released from the case.

In *Williams*, a person slipped and fell in the lobby of a building leased by the United States. *Id.* at 301. The United States had retained a contractor to perform custodial services in the building. The "sweep of the [service] contract was very broad" and allocated to the contractor the full responsibility for the "operation, maintenance, repair and support operations of the building." *Id.* In

a clause reminiscent of the contract between AAFES and Hogan, the contract in *Williams* required the contractor to "take all necessary precautions to prevent injury to the public, building, occupants, or damage to the property of others." *Id.* Nevertheless, the plaintiff in *Williams* contended the United States was negligent, independent of any wrongdoing of the contractor, because it could have inspected the building and posted warnings. *Id.* at 307. The *Williams* court ultimately dismissed the claims, holding the United States was not negligent. *Id.* at 311.

The United States offers *Williams* as an impenetrable iron curtain barring plaintiffs' claims. Instead, it is a sieve. The contract in *Williams* delegated safety and responsibility for the *entire* lobby to the custodial service. *Id.* at 303. Because of such a wholesale delegation, the *Williams* court relied on the discretionary function exception to the FTCA, an exception not pressed by the United States here. Briefly stated, the discretionary function exception, like the independent contractor exception, limits the waiver of sovereign immunity in the FTCA; the United States retains immunity in "[a]ny claim ... based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Finding the decision to engage a custodial service was discretionary, the *Williams* court held "any assertions that the United States was negligent in inspecting and not posting warning signs cannot prevail because these decisions are embraced by the overarching decision to engage [the contractor]." 50 F.3d at 310.

By contrast, the allegations of negligence in this case are not wholly predicated on a failure to inspect or a failure to post warning signs in an area for which the United States has contracted away responsibility. Instead, some allegations are based on the creation of a hazardous condition in an area for which the United States retained full responsibility—the shopping area of the Base Exchange. In this respect, another Fourth Circuit case,

*Berkman v. United States,* 957 F.2d 108 (4th Cir.1992), is analogous.

In *Berkman,* a passenger on a mobile lounge in an airport owned and operated by the Federal Aviation Administration ("FAA") slipped on an oily substance that had escaped from a faulty door mechanism through which he was walking. *Id.* at 110. In his complaint, the passenger alleged that the FAA failed to use reasonable care while lubricating the doors and failed to inspect the floor for any slippery substances. *Id.* at 114. The FAA successfully moved to dismiss for lack of subject matter jurisdiction, contending that an independent contractor who provided custodial services at the airport was responsible for the injury. *Id.* at 111. But the Fourth Circuit Court of Appeals reinstated the claim, concluding that "[t]he fact that an independent contractor may have been responsible for [plaintiff]'s fall ... cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." *Id.* at 114.

In *Berkman,* the contractor was not responsible for lubricating doors, an act that allegedly caused the passenger's injuries. *Id.* at 111. In fact, the contract in *Berkman* did not delegate any maintenance of the malfunctioning door. *Id.* Thus, the duty remained with the FAA. The *Berkman* court explicitly recognized this: "Since the contract between the FAA and [contractor] did not, by its terms, delegate these allegedly causative tasks to [contractor], it would appear that [plaintiff] has effectively claimed that both the government and [contractor] were responsible for his injuries." *Id.* at 114.

Similarly, the AAFES contract explicitly delegated to Hogan the responsibility of renovating the Base Exchange. D.I. 13 at Exh. A–1. This responsibility included removing and storing the carpet in a way that would ensure the safety of patrons. The contract defines the project as the "renovation of the main exchange sales area" and further specifies that the base sales area would remain "operational and open for business during the construction period." D.I. 13 at Exh. A–1. The contract mandates that Hogan "shall take proper safety and health precautions to protect the work, the workers, the public and the property of others. [Hogan] shall also be responsible for all materials delivered and work performed...." D.I. 13 at Exh. A–4. According to these terms of the contract, therefore, it appears that Hogan is responsible for preventing harm caused by its construction materials to patrons such as plaintiffs in the areas open for business during the renovation. *See* D.I. 48 at Exh. A. Significantly, however, like the contractor in *Berkman,* Hogan was not responsible for injuries suffered as a result of actions taken by Base Exchange employees.

The evidence is replete with issues of fact as to whether Base Exchange employees, independent of Hogan, caused and were responsible for plaintiffs' injuries. During the renovation process, employees of the Base Exchange decided where and how sales merchandise would be displayed. D.I. 48 at Exh. B. Specifically, employees of the Base Exchange were responsible for the placement of the display rack which plaintiff Viktoria Rhoades was examining when the accident occurred. The testimony of witnesses differs as to how close the display rack was placed to the construction area, *compare* D.I. 48 at Exh. E *with* D.I. 35 at Exh. A–39–43, and Hogan testified the carpet over which plaintiff tripped was placed at the bottom of the plastic drop cloth at the request of the Base Exchange manager, D.I. 48 at Exh. C, ¶ 8. From this testimony, a jury could infer the United States had negligently created a dangerous condition on the Base Exchange floor and was either partly or solely responsible for plaintiffs' injuries. Given the record, the Rule 12(b)(1) motion to dismiss by the United States must be denied; plaintiffs' claims cannot be labeled "insubstantial." Finally, the United States' request for leave to file a cross-claim against Hogan, unopposed by Hogan, will be granted.