**Julio MORENO, Plaintiff,**

**v.**

**UNITED STATES of America, United States Marshals Service, Defendants.**

**No. 96 Civ. 3723(SWK).**

United States District Court, S.D. New York.

May 28, 1997.

William Pagan & Associates, P.C. by William Pagan, New York City, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York by Linda A. Riffkin, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this personal injury action, defendants the United States of America and the United States Marshals Service (the "USMS") move to dismiss the complaint of plaintiff Julio Moreno ("Moreno"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that the Court lacks subject matter jurisdiction to hear Moreno's claim. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

On or about October 22, 1992, the USMS seized an apartment building located at 560 West 165th Street in New York (the "Building"), pursuant to a federal seizure warrant. The seizure warrant provided that the USMS was to use its discretion in maintaining the Building. Seizure Warrant, dated Oct. 22, 1992, annexed to the Declaration of Robert Johnson, dated Sept. 3, 1996 (the "Johnson Decl."), as Exh. "A," at 2. On or about November 1, 1992, the USMS executed a contract with P & L Management and Consulting, Inc. ("P & L") for the management of the Building (the "Contract"). Johnson Decl. at ¶ 4.

Pursuant to the Contract, P & L agreed to "exercise due diligence and care" to

[c]ause the Building to be maintained in such condition as may be deemed advisable by the USMS, including interior and exterior cleaning, and cause repairs and alterations o[f] the Building to be made, including, but not limited to, electrical, plumbing, carpentry, masonry, elevator, decorating, and such other incidental alterations or changes therein as may be proper. . . .

Contract, dated Nov. 1, 1992, annexed to the Johnson Decl. as Exh. "B," at ¶ III(B). In addition, P & L expressly agreed to: (1) perform all ordinary repairs and alterations; (2) determine the need for emergency repairs, including those immediately necessary for the safety of the tenants; (3) make all such emergency repairs; (4) to ensure that the Building was in compliance with all applicable laws; and (5) attend to the complaints of the tenants. Id. Moreover, under the Contract P & L was solely responsible for the daily management of the Building, including, inter alia, keeping the books, executing lease agreements, collecting rents, hiring independent contractors and providing regular reports to the USMS. Id. ¶¶ III(D), (G)-(K), (O)-(P). The USMS, on the other hand, was responsible for monitoring the financial condition of the Building by periodically inspecting the records maintained by P & L and approving certain expenditures exceeding $500. Id.

On or about April 15, 1994, Moreno was in a community bathroom on the fourth floor of the Building.[1] Moreno claims that he tripped over a loose and/or defective floor drain cover and fell. As a result, Moreno allegedly suffered serious and permanent personal injuries. Specifically, he sustained a "severe shock" to his nervous system, Complaint, filed May 17, 1996, at ¶ 27, which eventually required surgery, caused paralysis of his lower extremities, and resulted in the amputation of his right toes, Pl.'s Mem. of Law, dated March 4, 1997, at 2. Although Moreno claims that he was taken to Columbia Presbyterian Hospital by ambulance, see Affidavit of Julio Moreno, dated March 4, 1997, at ¶ 3, defendants assert that the Building records indicate that no emergency medical services were summoned on either April 14 or April 15, 1994, see Declaration of Nancy Evans, dated Sept. 3, 1996 (the "Evans Decl.") at ¶ 8.

On or about May 4, 1994, Moreno's counsel sent a letter to the USMS, informing them of Moreno's accident and of his intent to pursue a tort claim. In response, the USMS provided Moreno's counsel with administrative tort claims forms and requested that Moreno forward medical documentation to substantiate his allegations. The USMS claims that despite numerous requests, both oral and written, Moreno never provided supplied medical documentation in support of his claim. On December 8, 1995, Moreno was advised that his administrative tort claim against the USMS was denied as a result of the USMS's investigation of the facts and because of Moreno's failure to provide substantiating documentation.

On or about May 17, 1996, Moreno initiated the instant action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671, et sea., seeking to recover $25 million for the injuries he sustained.

## DISCUSSION

### I. Rule 12(b)(*l* )

A court faced with a motion to dismiss pursuant to Federal Rules of Civil Pro-

---

1. The complaint alleges that the incident occurred on April 15, 1994. In an affidavit dated May 13, 1994, however, Moreno states that the incident occurred on April 14, 1994.

cedure 12(b)(1) and 12(b)(6) must decide the jurisdictional question first, since a disposition of the Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction. *Dirschel v. Speck*, No. 94 Civ. 502, 1994 WL 330262, at *2 (S.D.N.Y. July 8, 1994).

■ A motion to dismiss pursuant to Rule 12(b)(1) challenges a court's statutory or constitutional power to adjudicate a case and "[t]ypically alleges that the federal court lacks either federal question or diversity jurisdiction over the action." *Jackson v. New York State Dep't of Correctional Servs.*, No. 94 Civ. 8731, 1995 WL 539644, at *2 (S.D.N.Y. Sept.8, 1995) (quoting 2A James W. Moore *et al.*, Moore's Federal Practice ¶ 12.07 (2d ed.1994)). Once challenged, the burden of establishing a federal court's subject matter jurisdiction over a matter rests on the party asserting jurisdiction. *Id.* In considering a motion to dismiss under Rule 12(b)(1), the Court may refer to evidence outside the pleadings, such as affidavits. *Gallo v. United States Dep't of Treasury, IRS*, 950 F.Supp. 1246, 1248 (S.D.N.Y.1997).

## II. Subject Matter Jurisdiction Under the FTCA

### A. Independent Contractor Defense

■ The United States is immune from suit "save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). The FTCA creates a limited waiver of sovereign immunity for claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States. *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995). Thus, the Court has subject matter jurisdiction over this action only if the negli-

gent or wrongful acts were caused by a Government employee.

Under the FTCA, Government employees are defined as "officers or employees of any federal agency ... and persons acting on behalf of a federal agency in an official capacity.... " 28 U.S.C. § 2671. The statute states that the term "federal agency" includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States...." *Id.* The FTCA makes clear, however, that a federal agency does not include "any contractor with the United States." *Id.* Thus, the jurisdictional question turns on whether Moreno's injuries were caused by the negligence of a federal employee or an independent contractor.

■ Whether an entity is a federal employee or an independent contractor is a question of federal law. *Leone v. United States*, 910 F.2d 46, 49 (2d Cir.1990), *cert. denied*, 499 U.S. 905, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991). In evaluating the nature of the relationship between the Government and the entity, here, P & L, the Court focuses on the terms of the contract between them. *Williams v. United States*, 50 F.3d at 305. Specifically, there are two primary factors that distinguish an agent from an independent contractor: (1) the "power of the Federal Government 'to control the detailed physical performance of the contractor,'" *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)); and (2) whether the Government supervises the day-to-day operations of the contractor, *B & A Marine Co., Inc. v. American Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir.), *cert. denied*, 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994).

The Contract between the USMS and P & L expressly delegates both detailed physical control and daily supervision of the Building to P & L. From the time the Building was seized by the USMS, P & L was responsible as the "managing agent" of the Building. *See* Contract, annexed to the Johnson Decl.

as Exh. "B," at ¶ III. As stated above, the Contract explicitly assigned to P & L the responsibility to perform all maintenance, repairs and alterations necessary to ensure that the Building was safe. *See id.* Similarly, P & L was solely responsible for all aspects of the daily management of the Building, including keeping the books and records, locating tenants, executing lease agreements, collecting rents, and hiring subcontractors and utility providers. *See id.* Also significant is the fact that P & L assumed full responsibility for ensuring that the Building was in compliance with applicable state and federal regulations. See *Kapnisakis v. United States*, No. 94 Civ. 8619, 1995 WL 510018, at *3 (S.D.N.Y. Aug.28, 1995) (fact that contractor was responsible for compliance with health and safety regulations significant in finding that contractor was not Government agent).

Moreover, the USMS played no role in the day-to-day supervision of the Building and did not physically control the conduct of P & L's employees. In fact, under the Contract, P & L was authorized to make repairs in order to protect the safety of the tenants without the USMS's prior approval.[2] Similarly, the Contract does not provide for the detailed surveillance of P & L employees by USMS personnel in connection with work performed under the Contract. Rather, the USMS's role with respect to the management of the Building was one of broad supervision, insufficient to confer liability pursuant to the FTCA. *See Leone v. United States*, 910 F.2d 46, 50 (2d Cir.1990) (where Government acts "generally as an overseer," no liability pursuant to the FTCA jurisdiction); *Lipka v. United States*, 369 F.2d 288, 290–92 (2d Cir. 1966) (same), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); *O'Neill v. United States*, 927 F.Supp. 599, 606–07 (E.D.N.Y.1996) ("[N]either the retention of the right to inspect the contractor's work, nor the power to control a contractor's compliance with the contract's specifications, is sufficient to convert the contractor's status from an independent contractor to an agent of the Government for the purposes of [the FTCA].");*Kapnisakis v. United States*, 1995 WL 510018, at *3 (Government's reservation of broad powers does not constitute a degree of control sufficient to support a finding of liability under the FTCA).

When faced with a similar fact pattern, the Court of Appeals for the Fourth Circuit arrived at the same conclusion. In *Williams v. United States*, 50 F.3d 299 (4th Cir.1995), the plaintiff sued the United States after slipping in the lobby of a Government-owned building. Like here, the contract language between the Government and the maintenance company was sweeping, and allocated to the maintenance company the obligation of maintaining the premises with respect to cleanliness, repair and safety. *Id.* at 302. Moreover, as with the contract in the present case, the contract in *Williams* held the management company responsible for all repairs necessary to protect the safety of the building's occupants. *Id.* Thus, finding that the maintenance company was an independent contractor rather than a Government employee, the court dismissed plaintiff's FTCA claims.

Viewing the Contract in its entirety, it is clear that the USMS had little, if any, direct control over the management and maintenance of the Building and that P & L was hired as an independent contractor, rather than a Government employee. Accordingly, Moreno's claims must be dismissed.

**B. Non–Delegable Duties**

The Court lacks subject matter jurisdiction over Moreno's claims for the additional reason that Moreno seeks to impose liability on the Government for non-delegable duties created by New York law. Moreno's claims are based on New York law, which requires property owners to maintain their premises in a safe condition. *See* N.Y. Mult. Dwell. Law § 78 (McKinney's 1996). Moreno asserts that as the owner of the Building, the Government is liable for the injuries caused by the defective floor drain, even if the only negligence was committed by P & L. This theory of liability must fail.

---

**2.** The only circumstance under which the USMS was required to approve P & L's conduct was for expenditures relating to ordinary repairs exceeding $500. *See* Contract, annexed to the Johnson Decl. as Exh. "B," at ¶ III(B).

■ Under New York law, "a party injured by the owner's failure to fulfill [its duty of safety] may recover from the owner even though the responsibility for maintenance has been transferred to another." *Mas v. Two Bridges Assocs. by Nat. Kinney Corp.*, 75 N.Y.2d 680, 687, 555 N.Y.S.2d 669, 673, 554 N.E.2d 1257, 1261 (1990). In other words, a land owner's duty to maintain safe premises is non-delegable. In cases such as the present one, where the Government has delegated to an independent contractor the responsibility for maintaining its property, imposing a non-delegable duty of safety on the Government "would essentially impose strict liability on the [G]overnment, disregarding the central inquiry mandated by the FTCA: whether any [G]overnment employee is guilty of a negligent act or omission." *Id.;* see also *Brown v. United States*, No. 92 Civ. 82S, 1994 WL 319015, at *11 (W.D.N.Y. June 8, 1994) (a claim against the United States under the theory that it possessed a non-delegable duty as a landowner under New York law is not permitted by the FTCA because such a theory of liability represents a form of strict liability) Consequently, courts have consistently held that non-delegable duties may not be used as a means to impose liability on the Government under the FTCA. *McCutcheon v. United States*, No. 94 Civ. 596E(F), 1996 WL 607083, at *5 (W.D.N.Y. Oct.15, 1996); *see also Basher v. United States*, No. 92 Civ. 186, 1995 WL 646343, at *3 (D.Conn. March 14, 1995) (the FTCA does not authorize claims against the Government based on a non-delegable duty, which the Government has nonetheless delegated to an independent contractor).

## C. Discretionary Function Exception

■ Finally, the Court lacks subject matter jurisdiction over this action because Moreno's claims are barred by the discretionary function exception to the FTCA. The FTCA provides that no claims may be brought which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the discretionary

function exception is to "prevent 'judicial second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berghoff v. United States*, 737 F.Supp. 199, 202 (S.D.N.Y.1989) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)).

■ Moreno claims that because the USMS was responsible for ensuring that P & L maintained the Building, including making any necessary repairs or alterations, the USMS may be held liable for P & L's failure to repair the defective floor drain. This claim is without merit. Both the USMS's decision to hire P & L to manage the Building, as well as its supervision of P & L in that capacity were discretionary decisions within the meaning of the FTCA exception.

As a general matter, it is clear that "[c]ontracting out the responsibility to maintain the [Building] while balancing fiscal considerations entails exercising judgment based on policy." *Williams v. United States*, 50 F.3d at 310. Thus, it is well established that the United States' decision to contract with independent companies to ensure maintenance of premises is a discretionary function, insulated from liability. *Id.* Moreover, the seizure warrant in this action specifically authorized the USMS to "use its discretion in maintaining the premises and leaseholds" and to utilize the "services of … a property manager … as it deems appropriate to protect and maintain" the Building. Seizure Warrant, annexed to the Johnson Decl. as Exh. "A," at 2. Accordingly, the USMS's decision to delegate the inspection and repair of the Building to P & L was a discretionary function authorized by law, and Moreno cannot challenge that decision under the FTCA.

Similarly, Moreno cannot challenge the manner in which USMS supervised P & L's performance under the Contract. The USMS delegated the day-to-day task of detecting and repairing unsafe conditions to P & L, while reserving the right to conduct tests to assure itself that the services provided by P & L conformed to the Contract requirements. This method of supervision

was a policy decision precisely of the type the discretionary function exception is intended to protect. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. at 819–20, 104 S.Ct. at 2767 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *see also Berghoff v. United States,* 737 F.Supp. at 204–05 ("[T]he United States' decision regarding the extent to which it would supervise [the contractor's] safety precautions is discretionary, and . . . cannot form the basis for a claim."). In sum, the method and extent of supervision of an independent contractor is within the sound discretion of the Government. *Id.* For this reason as well, Moreno's claims must be dismissed.[3]

### D. Additional Discovery

Moreno's assertion that further discovery is necessary before the Court can decide the jurisdictional issue is without merit. Specifically, Moreno claims that discovery is necessary because it may shed light on the following issues: (1) whether the USMS possessed actual and/or constructive notice of the defective floor drain and failed to take remedial measures to repair said condition; (2) whether the USMS had any involvement in the construction or design of the floor drain; and (3) whether a USMS employee regularly visited the Building before the accident. However, these factual allegations, even if true, do not confer jurisdiction on this Court.

First, whether the USMS had notice of the defective floor drain is irrelevant to the issue of P & L's status as an independent contractor, which is clear from the express terms of the Contract. *See Gertrude Burke v. United States,* No. 96 Civ. 2470, 1996 WL 671151, at *2 (S.D.N.Y. Nov.19, 1996) (case dismissed for lack of subject matter jurisdiction and no genuine issue of fact exists as to whether Government was responsible for repairing a defective sidewalk because contract clearly indicated that such responsibility rested with the contractor). In any event, any purported

omissions by the Government do not create liability because the USMS's delegation of matters of safety and repair to P & L falls within the discretionary function exception to the FTCA. *See Williams v. United States,* 50 F.3d at 310 (given that the decision to hire independent contractor falls within the ambit of the discretionary function exception, plaintiff's assertion that the United States was negligent in inspecting and/or correcting defect must fail because these decisions "are embraced by the overarching decision to engage [the contractor]"). Second, there is no allegation in the complaint that the USMS designed and/or constructed the floor drain and Moreno's attempt to raise this issue in the present motion is without support. Finally, even assuming a USMS employee periodically inspected P & L's maintenance of the Building, this fact would not warrant a finding that the USMS had the type and extent of control and supervision required for a finding of liability under the FTCA. "[T]he Government's power to inspect does not create a duty of care to a contractor's workers and does not support jurisdiction." *Kapnisakis v. United States,* 1995 WL 510018, at *3; *see also Leone v. United States,* 910 F.2d 46, 50 (2d Cir.1990) (Government not liable under FTCA even though United States "act[ed] generally as an overseer"), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991); *Berghoff v. United States,* 737 F.Supp. 199, 202 (S.D.N.Y.1989) (fact that contract may provide for Government employee's presence at a construction site does not warrant finding that the construction company is a Government agent under the FTCA). In the face of the unambiguous contractual language, the fact that a USMS employee might have regularly visited the Building to ensure P & L's compliance with the Contract does not cast doubt upon P & L's status as an independent contractor. *See Vasquez v. United States,* No. 81 Civ. 7844, 1994 WL 268242, at *2 (S.D.N.Y. June 15, 1994) (where contract terms make clear that maintenance company is independent contractor, allegations of Government control must fail).

---

3. In light of the aforementioned holdings, the Court does not address the Government's contention that Moreno failed to comply with the pres-

entment requirements of Section 2675(a) of the FTCA.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted.

SO ORDERED.