**Phillip LUMPKINS, et. al., Plaintiffs,**

v.

**UNITED STATES of America, et. al., Defendants.**

No. Civ.A. CCB–01–2730.

United States District Court, D. Maryland.

Feb. 21, 2002.

William Francis Mulroney, Patrick Marlin Wysong, Ashcraft and Gerel, Baltimore, MD, for Plaintiffs.

Michael A. DiPietro, Assistant United States Attorney, Baltimore, MD, Thomas M. DiBiagio, Office of the U.S. Attorney, Timothy E. Fizer, McNamara, Fizer, & Dent, Baltimore, MD, William Carlos Parler, Jr., Parler and Wobber LLP, Towson, MD, Dennis J. Lawson, Dechert Price and Rhoads, Washington, DC, Joan E. Burnes, Brett Schlossberg, Dechert, Philadelphia, PA, Thomas Joseph Cullen, Jr., Erica Ward Magliocca, Goodell DeVries Leech and Dann LLP, Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

This case arises from injuries sustained by Mr. Phillip Lumpkins ("Lumpkins") during a construction accident occurring on the grounds of the National Institutes of Health ("NIH") in Bethesda, Maryland. Mr. Lumpkins has sued, *inter alia*, the United States (the "Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et. seq.*, claiming that its failure to maintain the premises in a safe condition caused his injury.[1] The Government argues that the court lacks jurisdiction because the location of the accident was within the exclusive control of an independent contractor. The Government has moved to dismiss the suit under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. The motions have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons

that follow, the court will deny the Government's motion to dismiss.

## BACKGROUND

During the early 1990s, NIH implemented a long term plan to improve and modernize the major utility distribution systems on its Bethesda campus. As part of this program, NIH executed a contract in 1996 with W.M. Schlosser Co., Inc. ("WMS") for the renovation of boilers # 1, # 2, # 3, and # 4 in Building 11 (the "Contract"). (*See* Def.Mot. to Dism., Ex. 1, "Contract 263–97–C–0231.") Pursuant to the contract, WMS agreed to "independently, and not as an agent of the Government ... provide all labor, materials, supervision, coordination, equipment, transportation, and any other applicable elements of cost either direct or indirect as required for full and complete execution of work" on Boilers 1–4. (*Id.* at § C–1.) WMS was further required to provide "a full-time, on site Project Manager, with the authority to make on site decisions for the company," supported by "a full time, on site General Superintendent and Supervisory Personnel[.]" (*Id.*, Ex. 2, "Contract Specification Section 01205," § 1.04.A.) WMS also promised to "control any unsafe or unhealthy conditions associated with the work to be performed under the contract," "assume full responsibility and liability for compliance with all applicable regulations pertaining to the health and safety of personnel during the execution of the work," and "hold the Government harmless for any action on his/her part or that of his/her employees or subcontractors which results in illness, injury, or death." (*Id.*, Ex. 3, "Con-

---

1. Mr. Lumpkins is accompanied in this suit by his wife, Marlene Lumpkins, who asserts a claim for loss of consortium. The Government, however, requests that the court dismiss this claim because Mrs. Lumpkins did not file an administrative claim as required by

28 U.S.C. § 2675(a). The plaintiffs do not oppose the Government's request. (*See* Pl. Resp. and Opp. to Def.Mot. to Dism., p. 1.) Accordingly, the loss of consortium claim against the United States is dismissed.

tract Specification Section 01546," §§ 1.05.A, 1.05.C.) With respect to the safety of non-WMS employees and subcontractors, WMS was responsible for "tak[ing] all necessary precautions to prevent injury to the public, building occupants, or damage to property of others." (*Id.* at 3.02.A.) NIH reserved the right to inspect the construction work done by WMS and its subcontractors prior to final acceptance.[2] (*Id.*, Ex. 1, § E. 1.)

WMS subcontracted much of the boiler renovation work to M & M Welding & Fabrication, Inc. ("M & M"). On August 17, 1999, Phillip Lumpkins, a welder/boilermaker for M & M, and his son, Charles Lumpkins, were working on the boiler project in Building # 11. (*Id.*, Ex. 6, "NIH Police Report"; Pl.Resp. to Def.Mot., Ex. A, Aff. of P. Lumpkins, ¶ 3.) While the parties disagree about the precise cause of the accident, it is undisputed that as Mr. Lumpkins was standing on a section of grated walkway approximately 30 feet above the ground, the grating gave way, causing him to fall through the opening and hit two separate duct shafts before landing on the cement floor. (Def.Mot. to Dism., Ex. 6, "NIH Police Report"; Pl. Resp. to Def.Mot., Ex. A, Aff. of P. Lumpkins, ¶ 4.) Mr. Lumpkins was treated for injuries at Suburban Hospital. *Id.*, (Ex. 6, "NIH Police Report"; Ex. 7, "Event Report.")

Plaintiff has received workers' compensation from M & M and its insurer in accordance with Maryland law. (Def.Mot. to Dism., Ex. 4, "Workers' Compensation Commission Award," dated November 16, 1999.) On June 7, 2000, plaintiff filed a timely administrative claim with NIH. (*Id.*, Ex. 11, "Claim for Damage, Injury, or Death," received June 7, 2000.) After the United States Department of Health and Human Services (the parent department of NIH) failed to finally determine plaintiff's claim within six months of its filing,[3] Mr. Lumpkins initiated the instant suit, requesting 3.5 million in damages for the injuries he sustained.

### ANALYSIS

■ When subject matter jurisdiction is challenged under the FTCA, the plaintiff bears the burden of persuasion and must establish an unequivocal waiver of immunity with respect to his claim. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3rd Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991)); *see also McKeel v. United States,* 178 F.Supp.2d 493, 497 (D.Md.2001). The court may consider evidence beyond the pleadings in satisfying itself of its authority to hear the case. *Williams,* 50 F.3d at 304 (*citing Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977)).

■ The FTCA allows a plaintiff to sue the United States for damages resulting from the torts of Government employees acting within the scope of their employment to the extent that a private party would be liable for those acts under state

---

**2.** To assist in similar inspections, NIH hired Hill International, Inc. ("Hill") to serve as its construction quality management ("CQM") contractor in 1993. (*Id.; see also* Ex. 5, "Contract between NIH and Hill," dated 2/2/93.) Like WMS, Hill was hired "independently, and not as an agent of the Government," to "provide all management, supervision, labor, materials, supplies and equipment

... and assure effective performance of all services described [in the contract]." (*Id.* at § B-1.)

**3.** Under the FTCA, if an agency fails to make a final disposition of a claim within six months of its filing, the claimant may file an action in district court. *See* 28 U.S.C. § 2675(a).

law. *Id.* at 305; 18 U.S.C. § 1346(b). The FTCA, therefore, serves as a limited waiver of the sovereign immunity of the United States, allowing the Government to be held liable for the negligent acts or omissions of federal agents or employees. *Id.; see* 18 U.S.C. § 2671. It does not, however, waive the government's sovereign immunity for injuries resulting from the tortious conduct of independent contractors. *Id.* The distinction between an independent contractor and government employee for purposes of the FTCA is a question of federal law. *Id. (citing Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)). "[O]nly where the Government has the power under the contract to supervise a contractor's 'day-to-day operations' and 'to control the detailed physical performance of the contractor' " is the contractor an employee or agent of the United States. *Wood v. Standard Products Co., Inc.,* 671 F.2d 825, 829 (4th Cir. 1982).

 Central to the determination of whether an entity is an independent contractor are the terms of the contract defining its relationship with the Government. *Williams,* 50 F.3d at 305 (*citing Wood,* 671 F.2d at 829). After examining the contract at issue in this case, the court concludes that WMS was an independent contractor. Not only is WMS working "independently, and not as an agent of the Government," but it is responsible under the contract for providing all necessary labor, materials, equipment, transportation, coordination, and supervision; hiring full-time onsite supervisory staff; and ensuring and documenting its "effective management and control of the work." (*See* Def.Mot. to Dism., Ex. 1 § C–1; Ex. 2, §§ 1.04.A, 1.02.A.) *Compare Williams,* 50 F.3d at 302 (fact that contractor required to provide "all needed supplies, equipment, vehicles, and services" and

hire 24–hour, on site engineer significant in court's finding that contractor was not a Government agent). These factors indicate WMS was expected to exercise detailed physical control over the project and supervise the daily operations.

The contract also delegates to WMS matters relating to the health and safety of employees and subcontractors working on the project. WMS was responsible for controlling any unsafe or hazardous conditions associated with the work to be done, and assumed full responsibility for compliance with all relevant health and safety regulations. (*See id.,* Ex. 3, §§ 1.05.A, 1.05.C.). Although NIH reserved the right to inspect the work prior to final acceptance (*id.,* Ex. 1, § E. 1), courts have emphasized that this does not provide the type of daily supervision necessary to convert WMS into a federal agent for purposes of the FTCA. *Williams,* 50 F.3d at 306–07 (Government's reservation of the right to inspect and ensure compliance with federal standards does not amount to daily control over operations); *Berkman v. United States,* 957 F.2d 108, 113–14 (4th Cir.1992). Accordingly, WMS was an independent contractor, and the United States has no liability for WMS' negligent acts.

 Plaintiff contends, however, that he still may have a claim under Maryland law for the Government's own negligence in maintaining the premises. To further establish this claim, plaintiff requests, pursuant to Fed.R.Civ.P. 56(f), the opportunity to obtain discovery on five topics: (1) the control which NIH exerted over the renovation site; (2) the cause of the accident; (3) whether the catwalk Mr. Lumpkins was standing on was negligently constructed; (4) the extent, if any, of the Government's knowledge that the walkway presented a dangerous condition; and (5) the extent, if any, of the Government's involvement in

the walkway's construction. (*See* Pl.Resp. to Def.Mot. to Dism., p. 8.) Though the first matter is controlled by the terms of the contract, the court will allow limited discovery on the last three issues to aid it in determining whether plaintiff presents a cognizable claim.

■ Under Maryland law, an owner of land owes a nondelegable duty to those who may come upon their land, the nature and extent of which is fixed by the status of the person claiming it. *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336, 346 (1986). The law of some Maryland counties further imposes a duty on property owners to keep their property in safe and reasonable condition during construction. *See, e.g., Parker v. Neighborhood Theatres, Inc.*, 76 Md.App. 590, 547 A.2d 1080, 1081–82 (1988) (discussing the Prince George's County Code requirement that property owners exercise reasonable care to keep premises in a safe and reasonable condition during construction). The Fourth Circuit has repeatedly stated, however, that a state nondelegable duty cannot override the FTCA. *Williams*, 50 F.3d at 307–08 (*citing Berkman*, 957 F.2d at 112–113); *contra Dickerson, Inc. v. United States*, 875 F.2d 1577, 1582–83 (11th Cir.1989) (holding that the Government may not delegate to an independent contractor a duty made nondelegable by state law). State law, therefore, cannot prevent the Government from successfully delegating these responsibilities to independent contractors and, in so doing, avoiding liability under the FTCA.

Since WMS was an independent contractor, the Government cannot be held liable for the tortious conduct of WMS, its workers, or its subcontractors. Moreover, because WMS agreed to maintain the renovation project safely and assumed liability for any project-related injuries to its employees or subcontractors, the Government is also not responsible for injuries created by or associated with WMS's failure to properly maintain the construction site.

"The fact that an independent contractor may have been responsible for [the plaintiff's] fall, however, cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." *Berkman*, 957 F.2d at 114 (*citing McKay v. United States*, 703 F.2d 464, 472 (10th Cir.1983).) If Mr. Lumpkins' accident was caused by a defect in the walkway existing before the renovation began, it is possible the government may be held liable for its negligence, if any, in creating the defect. The terms of the contract do not, by themselves, establish that WMS assumed a general duty to repair or ameliorate defective conditions on the premises. Rather, the contract indicates an agreement by WMS to "control any unsafe or unhealthy conditions *associated with the work to be performed* [.]" (*See* Def.Mot. to Dism., Ex. 3, § 1.05.A2.). In this regard, the contract here is distinguishable from cases like *Williams*, where "the sweep of the contract was very broad," and allocated to the contractor full responsibility for the " 'management, operation, repair, and support operations' " of the building. *Williams*, 50 F.3d at 301; *see also Moreno v. United States*, 965 F.Supp. 521, 525 (S.D.N.Y.1997) (independent contractor to perform "all maintenance, repairs, and alterations necessary" to ensure the safety of the premises); *Brookins v. United States*, 722 F.Supp. 1214, 1215 (E.D.Pa.1989) (independent contractor responsible for supervising all repairs, maintenance, and operation activities); *Harris v. United States*, 424 F.Supp. 627, 629 (D.Mass.1976) (independent contractor responsible for " 'continuing maintenance of buildings and grounds, and su-

pervision of all repair, maintenance, and operating activities' "). Moreover, if a Government agent was directly involved in negligently constructing the walkway in the first place, it is doubtful whether the Government can 'delegate' its responsibility for that involvement to an independent contractor, although it may be immune from liability under the discretionary function exception. *See, e.g., Moreno,* 965 F.Supp. at 527 (denying the plaintiff's discovery request because, *inter alia,* the plaintiff failed to allege that the Government designed or constructed the defective condition, and no evidence on the record supported such an assertion); *compare Williams,* 50 F.3d at 308–311.

There is a substantial dispute between the parties about the cause of Mr. Lumpkins' accident. According to the plaintiff, the accident occurred because the grating, which served as the walkway Mr. Lumpkins was standing on, was unsecured. For support, plaintiff refers to the M & M Accident Report:

> Phillip Lumpkins was walking across a section of grating and due to the lack of an anchoring device the grating shifted or moved and along with Phillip, fell through the opening. If you look at the pictures, where two (2) grating panels meet, you see now without an anchoring device, the end sections before the first cross bar are allowed to lace together. Also, the pictures indicate that the length of the panel is some what [sic] shorter than the opening it was covering. The short fall along with the lack of an anchoring device played a crucial role in the injury ... All of the grating manufacturers information require an anchoring device.

(*See* Pl.Resp. to Def.Mot. to Dism., p. 5 (*citing* Def.Ex. 8, "Accident Report of M & M, Inc.").) Plaintiff contends, therefore, that if a federal employee was responsible for the lack of an anchoring device, or if the Government knew of this dangerous condition and failed to disclose it, the Government may be held liable for plaintiff's injuries. (*See* Pl.Resp. to Def.Mot. to Dism., p. 5.)

The Government, on the other hand, claims the accident occurred because Mr. Lumpkins, his son, and/ or other M & M employees improperly attempted to remove a heavy explosion-proof panel from a boiler in Building 11. By using the column supporting the grating as part of a rigging device to lift the panel, the Government believes the workers caused the unsecured grating to shift, which, in turn, caused Mr. Lumpkins to fall. (*See* Def. Mot. to Dism., p. 6.) Though no discovery has been had in this case, the evidence submitted by the Government suggests both factors may have contributed to Mr. Lumpkins' injuries. The WMS Accident Report, for example, concludes:

> The cause of [Mr. Lumpkins' fall] was reviewed and discussed thoroughly with representatives of the W.M. Schlosser Company, M & M Welding and Fabrication and Mr. Michael Mologne of Hill International. Although some of the attending representatives did not agree fully with our determination, we find that the cause of this accident occurred due to a combination of grating not being secured and not having a continuous band around its perimeter to prevent its displacement. In addition, we find that the rigging being placed through the grating and used at an angle of approximately 45 degrees contributed to slippage.

(*See* Def.Mot. to Dism., Ex. 9, "WMS Accident Report".)

The Government admits that the grated walkway was not secured by an anchoring device. (Def.Mot. to Dism., p. 6.) The primary question then is whether the Gov-

ernment has some responsibility for the grating being left unsecured. If so, a factfinder could reasonably find that the unsecured nature of the walkway played a role in causing Mr. Lumpkins' injuries, even if the actions of Mr. Lumpkins and/ or his co-workers were a contributing factor as well. *Rhoades v. United States,* 950 F.Supp. 623, 631 (D.Del.1996) (*citing Berkman,* 957 F.2d at 110–114) (denying the Government's motion to dismiss because federal employees, independent of the independent contractor, may have been negligently responsible, either partly or solely, for plaintiffs' injuries). If plaintiff can show that a Government agent was responsible for the unsecured grating through further discovery, plaintiff may have a maintainable claim. *Id.*

This situation is distinguishable from the circumstances of *McKeel v. United States. McKeel,* 178 F.Supp.2d 493 (D.Md.2001). In *McKeel,* the court considered whether the FTCA insulated the Government from liability for the injuries of a sheet-metal worker exposed to polycholorinated byphenyls (PCBs) while working on air ducts in an Army research laboratory. *Id.* at 498. After determining that the general contractor involved was an independent contractor for FTCA purposes, the court dismissed plaintiff's claim because, *inter alia,* the relevant contract clearly disclosed to the contractor that his workers could be exposed to hazardous substances in the course of the project. *Id.* at 499[4] Since the independent contractor still agreed to assume responsibility for employee-related safety matters, he was responsible for any injuries to his staff or subcontractors that resulted from hazardous exposure. *Id.* In this case, there is no comparable disclosure provision. It is not clear from the contract alone that WMS's assumption of responsibility for workplace safety encompassed latent defects in the walkway existing prior to the contract between WMS and the Government, which may have been created by Government agents, and of which WMS may have had no reason to know.

Assuming *arguendo* that the unsecured grating contributed, at least partially, to Mr. Lumpkins' fall, the court will permit the parties to conduct discovery for 45 days regarding the Government's involvement in and/ or knowledge of the grating being left unsecured.[5] *Berkman,* 957 F.2d at 114–15; *Rhoades,* 950 F.Supp. at 630–31. Accordingly, the Government's motion to dismiss will be denied. A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

---

4. The *McKeel* contract provided:
 '[D]uring operations, such as excavation or demolition, materials may be uncovered which could be hazardous (e.g. asbestos). Contractor personnel, if they encounter unrecognized or unknown materials in which they are unsure of possible contamination or actions to take, shall immediately discontinue work in that area, and shall notify, through the Contracting Officer or his representative, the installation Safety Office ...'
 *McKeel,* at 499 (citation omitted).

5. Discovery is limited, for now, to the question of the Government's involvement in and/ or knowledge of the unsecured state of the walkway. This seems a logical course of action because, if the Government was neither responsible for nor knowledgeable of the grating being left unsecured, plaintiff's claim against the Government must fail, even if the lack of an anchoring device did contribute to Mr. Lumpkins' fall. If plaintiff can set forth sufficient evidence to maintain his claim after discovery regarding the Government's knowledge and involvement, the court will permit further discovery on other matters, including, *e.g.,* the cause of the accident.

1. the defendant's motion to dismiss is **DENIED**;

2. the parties shall conduct discovery limited to the issues specified in the accompanying Memorandum, and file a status report with the court no later than April 24, 2002; and

3. copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.