Phillip LUMPKINS

v.

UNITED STATES of America.

No. Civ.A. CCB–01–2730.

United States District Court,
D. Maryland.

Aug. 7, 2002.

William Francis Mulroney, Patrick Marlin Wysong, Ashcraft and Gerel, Baltimore, MD, for Plaintiff.

Thomas M. DiBiagio, Michael A. DiPietro, Office of the United States Attorney, Baltimore, MD, Thomas G. Corcoran, Jr., Law Office, Washington, DC, Timothy E. Fizer, McNamara Fizer and Dent, Baltimore, MD, William Carlos Parler, Jr., Parler and Wobber LLP, Towson, MD, David A. Skomba, Andrew T. Stephenson, Franklin and Prokopik PC, Baltimore, MD, D. Stephenson Schwinn, Rachel Bob, Jordan Coyne and Savits LLP, Washington, DC, Dennis J. Lawson, Dechert Price and Rhoads, Washington, DC, Joan E. Burnes, Brett Schlossberg, Dechert, Philadelphia, PA, Thomas Joseph Cullen, Jr., Erica Ward Magliocca, Goodell DeVries Leech and Dann, Baltimore, MD, John P. Rufe, Law Officer of Ileen M. Ticer, Hunt Valley, MD, for Defendant.

## *MEMORANDUM*

BLAKE, District Judge.

This case arises from injuries sustained by Mr. Phillip Lumpkins ("Lumpkins") during a construction accident occurring on the grounds of the National Institutes of Health ("NIH") in Bethesda, Maryland. Mr. Lumpkins has sued, *inter alia*, the United States (the "Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2671, *et. seq.*, claiming that its failure to maintain the premises in a safe condition caused his injury. On February 21, 2002, this court denied the Government's motion to dismiss, and agreed to allow the parties to engage in limited discovery to determine whether the plaintiff presented a cognizable claim. *Lumpkins v. United States*, 187 F.Supp.2d 535 (D.Md.2002) (*Lumpkins I* ). Having concluded the limited discovery permitted by the court, the Government has renewed its request for dismissal of plaintiff's claims on the basis that the court lacks subject matter jurisdiction under the discretionary function exception to the FTCA.[1] The mo-

---

1. Although the parties do not characterize it as such, the court will refer to the present motion as the Government's Renewed Motion to Dismiss so as to distinguish it from the first motion, which the court will refer to as the Government's Motion to Dismiss.

tions have been briefed fully, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant the Government's renewed motion to dismiss.[2]

## BACKGROUND

During the early 1990s, NIH implemented a long term plan to improve and modernize the major utility distribution systems on its Bethesda campus. As part of this program, NIH contracted with WMS to be the principal contractor for the renovation of boilers # 1, # 2, # 3, and # 4 in Building 11. (*See* Gov't Mot. to Dism, Ex. 1, the "NIH/WMS Contract".) WMS, in turn, subcontracted much of the boiler renovation work to M & M Welding & Fabrication, Inc. ("M & M").

On August 17, 1999, Phillip Lumpkins, a welder/ boilermaker for M & M, and his son, Charles Lumpkins, were working on the boiler project in Building # 11. While the parties disagree about the precise cause of the accident, it is undisputed that as Mr. Lumpkins was standing on a section of grated walkway approximately 30 feet above the ground, the grating gave way, causing him to fall through the opening and hit two separate duct shafts before landing on the cement floor.[3] (*Id.,* Ex. 6, "NIH Police Report;" Pl.Resp. to Gov't Mot. to Dism., Ex. A, Aff. of P. Lumpkins, ¶ 4.) Mr. Lumpkins was treated for injuries at Suburban Hospital. (Gov't Mot. to Dism., Ex. 6; Ex. 7, "Event Report.")

Plaintiff has received workers' compensation from M & M and its insurer in accordance with Maryland law. (*Id.,* Ex. 4, "Workers' Compensation Commission Award," dated November 16, 1999.) On June 7, 2000, plaintiff filed a timely administrative claim with NIH. (*Id.,* Ex. 11, "Claim for Damage, Injury, or Death," received June 7, 2000.) After the United States Department of Health and Human Services (the parent department of NIH) failed to finally determine plaintiff's claim within six months of its filing,[4] Mr. Lumpkins initiated the present suit, requesting 3.5 million dollars in damages for the injuries he sustained.

## ANALYSIS

██ When subject matter jurisdiction is challenged under the FTCA, the plaintiff bears the burden of persuasion and must establish an unequivocal waiver of immunity with respect to his claim. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3rd Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991)); *see also McKeel v. United States,* 178 F.Supp.2d 493, 496 (D.Md.2001). The court may consider evidence beyond the pleadings in satisfying itself of its authority to hear the case. *Williams,* 50 F.3d at 304 (*citing Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977)).

---

**2.** Because the court concludes that it is without jurisdiction to hear the plaintiff's case, it need not reach the failure to warn and assumption of the risk arguments made by the parties, or the plaintiff's argument that additional discovery is required.

**3.** As the court noted in *Lumpkins I,* the plaintiff argues that the accident occurred because the grating, which served as the walkway Mr. Lumpkins was standing on, was unsecured. 187 F.Supp.2d at 541. The Government, on

the other hand, asserts that the accident occurred because Mr. Lumpkins, his son, and/or other M & M employees improperly attempted to remove a heavy explosion-proof panel by using the column supporting the grating as part of a rigging device. *Id.*

**4.** Under the FTCA, if an agency fails to make a final disposition of a claim within six months of its filing, the claimant may file an action in district court. *See* 28 U.S.C. § 2675(a).

The FTCA allows a plaintiff to sue the United States for damages resulting from the torts of Government employees acting within the scope of their employment to the extent that a private party would be liable for those acts under state law. *Id.* at 305; 28 U.S.C.A. § 1346(b). Thus, the FTCA serves as a limited waiver of the sovereign immunity of the United States, allowing the Government to be held liable for the negligent acts or omissions of federal agents or employees. *Id.; see* 28 U.S.C.A. § 2671. It does not, however, waive the government's sovereign immunity for injuries resulting from the tortious conduct of independent contractors. *Id.* Nor does it waive immunity for acts or omissions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government ..." 28 U.S.C.A. § 2680(a).

Mr. Lumpkins argues that his injury occurred because the grating he was standing on was unsecured. *Lumpkins I,* 187 F.Supp.2d at 541; *see also* Pl.Resp. to Gov't Renewed Mot. to Dism., p. 8. He asserts that the United States may be held liable if an employee of NIH was responsible for the lack of an anchoring device and/or if the Government knew of this dangerous condition and failed to disclose it. (*See* Pl.Resp. to Gov't Renewed Mot. to Dism., p. 12.) In response to the Government's previous motion, the court determined that WMS was an independent contractor and therefore the Government could not be held responsible for WMS's negligent acts. *Lumpkins I,* 187 F.Supp.2d at 539. The court allowed the parties to conduct further discovery, however, on the question of the Government's own responsibility, if any, for the walkway being unsecured.[5] *Id.* at 540. Yet, the court specifically noted that the Government might still be immune from liability under the discretionary function exception. *Id.* at 541.

In support of the renewed motion to dismiss, the Government has submitted new evidence indicating that WMS assumed complete responsibility, prior to Mr. Lumpkins' accident, for repairing and securing the grated walkways. Pursuant to Section 05500 (Metal Fabrications) of the NIH/WMS Contract, WMS agreed "to [d]esign, engineer, fabricate, and install ... (5) Heavy Duty Metal Bar Gratings: Capable of withstanding a uniform load of 7200 PA ft. or a concentrated load of 18,-000 N whichever produces greater stress." (*See* Govt's Renewed Mot. to Dism., Ex. 1, § 1.05(B)(5); *see also* §§ 1.02(A)(8), 1.02(A)(13).) WMS also promised to install "anchors and connections" and "[p]rovide banding bars attached by welding to entire perimeter of floor area" with respect to the metal gratings. (*See id.,* §§ 2.11(B)(2), 2.11(E).) On September 15, 1997, WMS examined the grated walkways in the boiler room and concluded that most of them did not require complete demolition. (*See id.,* Ex. 3, "WMS Request for Information," dated September 16, 1997, p. 1.) Thus, WMS recommended that the majority of the structural steel, grat-

---

**5.** On the basis of the record before it, the court stated,

'The fact that an independent contractor may have been responsible for [the plaintiff's] fall, however, cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort.' *Berkman v. United States,* 957 F.2d 108, 114 (4th Cir.1992) (*citing McKay v. United States,* 703 F.2d 464, 472 (10th Cir.1983)). If Mr. Lumpkins' accident was caused by a defect in the walkway existing before the renovation began, it is possible the government may be held liable for its negligence, if any, in creating the defect.

*Lumpkins I,* 187 F.Supp.2d at 540.

ings and handrails, including the section of catwalk from which Mr. Lumpkins fell, remain in place. (*See id.,* Ex. 3, pp. 1–2; Ex. 4, Aff. of M. Ebrahimi, ¶ 6.) At a progress meeting between WMS, M & M (Mr. Lumpkins' direct employer), the boiler renovation project Engineer, and the boiler renovation project Construction Quality Manager, it was agreed that, although WMS would be allowed to leave the existing structural steel in place, WMS still would be required to replace and secure all gratings, handrails, and toe stops. (*See id.,* Ex. 5, Progress Meeting Minutes, dated April 27, 1998.) Jean Riddle, the Contracting Officer for the NIH/WMS Contract, confirmed this agreement with WMS by letter dated May 21, 1998, and NIH approved the change order on February 3, 1999. (*See id.,* Ex. 6, Letter from Jean Riddle to WMS; Ex. 7, Change Survey.) Thus, as of February 1999, WMS was solely and fully responsible for the grated walkways in the boiler room.

▮ Because the Government had contracted away its responsibility to WMS, it cannot be held liable for walkway defects, even if those defects were created by government agents prior to the NIH/WMS Contract. The Government's decision to engage WMS to replace and secure the walkways falls within the discretionary function exception. "[W]hen governmental conduct (1) is the product of choice or is a judgment and (2) is 'based on considerations of public policy,' it becomes a discretionary act shielded from tort liability." *Minns v. United States,* 155 F.3d 445, 451 (4th Cir.1998) (*citing Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)); *Williams,* 50 F.3d at 309; *McKeel,* 178 F.Supp.2d at 500–01. If, however, government action is prescribed by federal statute or regulation, "the discretionary function exception does not apply because 'the employee has no rightful option but to adhere to the directive.'" *Minns,* 155 F.3d at 451 (*citing*

*Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954). In determining whether an act is "based on considerations of public policy," *id.,* a court must "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States,* 986 F.2d 716, 721 (4th Cir.1993). The focus, then, is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

NIH's decision to require WMS, as the independent contractor renovating boilers 1–4, to replace and anchor the grated catwalks surrounding the boiler area was not prescribed by statute or regulation. Moreover, Mr. Lumpkins has failed to rebut the Government's assertion that the decision was grounded in policy considerations regarding expense, administration, continued operations, and access to the boiler renovation work. Indeed, the primary reason NIH made WMS responsible for replacing the steel, gratings, toe stops, and handrails under the original contract was because it believed all of these items had to be removed in order for the boiler repairs to be properly performed. (*See* Gov't Renewed Mot. to Dism., Ex. 4, Aff. of M. Ebrahimi, ¶ 5.) As the Fourth Circuit has explained: "[t]he decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy ..." *See Williams,* 50 F.3d at 310 (*citing Myers & Myers, Inc. v. United States Postal Serv.,* 527 F.2d 1252, 1256 (2nd Cir.1975); *Scanwell Lab., Inc. v. Thomas,* 521 F.2d 941, 948 (D.C.Cir.1975), *cert. denied,* 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Gowdy v. United*

*States,* 412 F.2d 525, 529 (6th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969); *Thompson v. Dilger,* 696 F.Supp. 1071, 1077 n. 9 (E.D.Va.1988)); *see also McKeel,* 178 F.Supp.2d at 503; *Moreno v. United States,* 965 F.Supp. 521, 526 (S.D.N.Y.1997). Thus, plaintiff's attempt to hold the Government liable is barred by the FTCA.

Given that the decision to engage WMS falls within the discretionary function exception, Mr. Lumpkins' assertion that the United States was negligent in failing to warn him of potential dangers regarding the grated catwalks cannot prevail because the decision not to do so is embraced by the overarching decision to engage WMS. *See Williams,* 50 F.3d at 310 (finding that the Government's decision not to post warning signs where it had contracted out its responsibility to maintain a particular property fell within the discretionary function exception as part of the overall decision to engage the independent contractor). Even if this were not the case, WMS, having agreed to replace and secure the grated catwalks and having conducted its own examination of the walkways themselves, (*see* Gov't Renewed Mot. to Dism., Ex. 3), knew or should have known that, as part of its agreement to protect its on-site workers and subcontractors, (*see* Gov't Mot. to Dism., Ex. 3, § 1.05.A2; 1.05.C), it would be responsible for catwalk-related hazards. *Cf. Lumpkins I,* 187 F.Supp.2d at 540–42. Accordingly, the Government's motion to dismiss will be granted. A separate order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the Government's motion to dismiss (Docket # 47) is **GRANTED;** and

2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.